Joseph Mitchell PARSONS, Plaintiff and Appellant,

v.

M. Eldon BARNES, in his capacity as Warden of the Utah State Prison, Defendant and Appellee.

No. 920126.

Supreme Court of Utah.

Jan. 11, 1994.

Rehearing Denied April 18, 1994.

Ronald J. Yengich, Gregory J. Sanders, Kirk Gibbs, Salt Lake City, for plaintiff.

R. Paul Van Dam, Atty. Gen., Kris Leonard, Asst. Atty. Gen., Salt Lake City, for defendant.

HOWE, Justice:

Plaintiff Joseph Mitchell Parsons appeals from the denial of his petition for a writ of habeas corpus.

On August 30, 1987, Parsons was hitchhiking near Barstow, California, when the victim, Richard L. Ernest, offered him a ride to Denver, Colorado. Parsons accepted. At 3:00 the next morning, the two men stopped to sleep at the Lunt Park rest area on Interstate Highway 15 near Cedar City, Utah. Both men were settling into sleep when, according to Parsons, Ernest made two sexual advances. The men struggled, and Parsons stabbed Ernest in the chest several times with a five-inch double-edged knife.

Parsons drove about a mile from the rest area and pushed Ernest's body onto the shoulder of the highway. He then drove to a

service station/convenience store in Beaver, Utah, where he changed his clothes, cleaned out the car, and discarded Ernest's personal belongings in a trash dumpster. Using the victim's credit card, he purchased gas and food. From Beaver, he drove to Richfield, Utah, where he again used Ernest's credit card to purchase several items and to get a motel room. Later that day, police officers were alerted to Parsons' unusual activities at the convenience store and to his fraudulent credit card purchases. At 4:15 p.m., officers found him sleeping in Ernest's car at a rest area near Salina, Utah, and arrested him. The next morning, police officers discovered the victim's body.

On September 2, the Iron County prosecutor filed an information charging Parsons with first degree murder and aggravated robbery. The same day, the prosecutor took the statements of two witnesses under oath at his office, one from Beverly Ernest, the victim's widow, and one from Chad Williams, an employee at the Beaver convenience store.

The fifth district court began a preliminary hearing on September 17 but discontinued the proceeding at the request of Parsons' appointed counsel. The next day, on the advice of counsel, Parsons pleaded guilty to first degree murder in violation of Utah Code Ann. § 76–5–202.[1] Specifically, he pleaded to the offense as defined in section 76–5–202(1)(h) (intentionally or knowingly causing the death of another having been previously convicted of a felony involving the use or threat of violence to another person). In addition, Parsons pleaded guilty to aggravated robbery and theft of an operable motor vehicle. The sentencing jury imposed the death sentence. We affirmed the sentence on direct appeal. *State v. Parsons,* 781 P.2d 1275 (Utah 1989).

On March 8, 1990, Parsons filed a pro se petition for habeas corpus review in the third district court. Approximately seven months later, his new appointed counsel filed an amended petition asserting several instances of ineffective assistance of counsel at trial and on appeal. The petition also raised a constitutional issue independent of the ineffective assistance allegations. Parsons contended that by taking the sworn statements of witnesses without giving notice to the defense, the prosecutor violated his federal constitutional rights to counsel and to confront the witnesses against him, U.S. Const. amend. VI, as well as his federal and state constitutional rights to due process. U.S. Const. amend. XIV; Utah Const. art. I, § 7.

Following an evidentiary hearing, the third district court denied the writ, holding that Parsons had received effective assistance of counsel. The court addressed the constitutional question solely as an ineffective-assistance-of-counsel claim, not as a substantive constitutional error. The court denied compensation for appointed counsel in the habeas proceeding, holding that it was a matter for legislative rather than judicial resolution. Parsons appeals.

## STANDARD OF REVIEW

 In deciding habeas appeals, we review conclusions of law for correctness, according "no deference to the lower court's conclusions." *Gerrish v. Barnes,* 844 P.2d 315, 318–19 (Utah 1992) (citing *Fernandez v. Cook,* 783 P.2d 547, 549 (Utah 1989)). However, "the trial court's factual findings shall not be set aside on appeal unless clearly erroneous." *State v. Tyler,* 850 P.2d 1250, 1253 (Utah 1993). Ineffective-assistance-of-counsel claims present a mixed question of law and fact. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *State v. Templin,* 805 P.2d 182, 186 (Utah 1990).

## DENIAL OF DUE PROCESS, RIGHT TO COUNSEL, AND RIGHT TO CONFRONT WITNESSES

As explained, on the same day he charged Parsons with first degree murder, the prosecutor took the statements of Williams and Mrs. Ernest under oath. Parsons now ar-

---

1. Following this verdict, the statute was amended in 1991, deleting the first degree murder classification and making the crime "aggravated murder." Utah Code Ann. § 76–5–202 (Supp. 1993).

gues that by taking these sworn statements without giving notice to the defense, the prosecutor violated his federal constitutional right to counsel and to confront the witnesses against him, U.S. Const. amend. VI, and his federal and state constitutional rights to due process. U.S. Const. amend. XIV; Utah Const. art. I, § 7. Parsons raises this argument independent of his ineffective assistance allegations.

Habeas relief is available where a defendant has suffered an "obvious injustice" or "substantial and prejudicial denial of a constitutional right." *Gerrish v. Barnes*, 844 P.2d at 319; *Hurst v. Cook*, 777 P.2d 1029, 1034 (Utah 1989). However, the writ can neither substitute for, nor perform the function of, regular appellate review. *Codianna v. Morris*, 660 P.2d 1101, 1104 (Utah 1983); *see, e.g., Hurst v. Cook*, 777 P.2d 1029, 1034 (Utah 1989); *Bundy v. Deland*, 763 P.2d 803, 804 (Utah 1988); *Brown v. Turner*, 21 Utah 2d 96, 98–99, 440 P.2d 968, 969 (1968). For this reason, a "party may not raise issues in a habeas corpus petition that could or should have been raised on direct appeal." *Fernandez*, 783 P.2d at 549. However, where "unusual circumstances are present that justify the failure to raise the issue on direct appeal, a court may entertain such a claim raised for the first time in the habeas corpus petition." *Id.*

The State argues that Parsons' substantive constitutional arguments are procedurally barred because he failed to raise them on direct appeal and because he has not shown "unusual circumstances" justifying his failure to do so. While it is true that he has not alleged the requisite unusual circumstances, "procedural default is not always determinative of a collateral attack on a conviction" where, as in this case, "it is alleged that the trial was not conducted within the bounds of basic fairness or in harmony with constitutional standards." *Hurst*, 777 P.2d at 1036. We therefore reach the merits of Parsons' federal constitutional arguments. However, after careful consideration, we conclude that his Sixth and Fourteenth Amendment rights were not violated.[2]

Rule 14(h) of the Utah Rules of Criminal Procedure exclusively governs the taking of depositions in criminal cases.[3] *See State v. Nielsen*, 522 P.2d 1366, 1367 (Utah 1974) (holding that rule 30 of the Utah Rules of Civil Procedure, permitting discovery depositions, does not apply to criminal cases). It permits depositions in narrow circumstances:

> (h) Whenever a material witness is about to leave the state, or is so ill or

**2.** We do not address Parsons' due process claim under article I, section 7 of the Utah Constitution because he has nominally relied on the Utah Constitution while actually relying on the parallel federal provision in the Fourteenth Amendment. We reaffirm our statement in *State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988), *vacated on other grounds, Lafferty v. Cook*, 949 F.2d 1546 (10th Cir.1991), that "[a]s a general rule, we will not engage in state constitutional analysis unless an argument for different analyses under the state and federal constitutions is briefed." Parsons has not briefed his state due process claim, and we will not "engage in constructing arguments out of whole cloth" on his behalf. *Id.*

**3.** Section 77–22–2 of the Utah Code permits county attorneys to subpoena witnesses and to "compel their attendance and testimony under oath." Utah Code Ann. § 77–22–2(2)(a) (Supp. 1993). The county attorney may exercise this power only in conjunction with a criminal investigation with "approval of the district court and for good cause shown." Utah Code Ann. § 77–22–2(1)(a) (Supp.1993). A county prosecutor

proceeds under section 77–22–2 *prior* to commencing prosecution of a defendant or defendants. *KUTV Inc. v. Conder*, 635 P.2d 412, 414 (Utah 1981).

The legislature's purpose in granting subpoena powers to prosecutors is "to provide a method of keeping information gained from investigations secret both to protect the innocent and to prevent criminal suspects from having access to information prior to prosecution." Utah Code Ann. § 77–22–1. For this reason, the statute does not require the prosecutor to give notice of the proceedings to persons being investigated, nor does it require such persons and their counsel to be present during the proceedings. Utah Code Ann. § 77–22–2(3)–(4).

The sworn statements at issue are not those contemplated by section 77–22–2. The prosecutor testified that in taking the sworn statements, he was not proceeding pursuant to any investigative subpoena power. In addition, he took the statements of Williams and Mrs. Ernest *after* charges had been filed against Parsons. Because there was no need to keep investigatory information secret, the prosecutor immediately gave both statements to defense counsel.

infirm as to afford reasonable grounds for believing that he will be unable to attend a trial or hearing, either party may, upon notice to the other, apply to the court for an order that the witness be examined conditionally by deposition. Attendance of the witness at the deposition may be compelled by subpoena. The defendant shall be present at the deposition and the court shall make whatever order is necessary to effect such attendance.

Utah R.Crim.P. 14.

■ When a prosecutor takes a statement that does not conform to the requirements of rule 14(h), he or she has not taken a deposition even if the witness gives the statement under oath. Admittedly, the term "deposition" is sometimes "used in a broad sense to describe any written statement verified by oath." 23 Am.Jur.2d *Depositions and Discovery* § 108 (1983).[4] However, according to rule 14(h), a statement under oath is not a deposition unless the court has ordered the proceeding, the deposing party has given notice to the other party, the defendant is present, and the witness being deposed is about to leave the state or is so ill that his or her attending the trial is unlikely. At the habeas proceeding, the prosecutor testified that he was not proceeding under rule 14(h) when he took the statements of Williams and Mrs. Ernest. Rather, he took the statements "to preserve and gain information" and "to put everything in perspective—times, dates, who did what." He did not apply to the court for an order to take the statements, nor did he notify Parsons. Accordingly, we agree with the trial court that the statements of Williams and Mrs. Ernest "were not 'depositions', but were rather 'sworn statements' generated by a careful and thoughtful investigative prosecutor." While no statutory or procedural rule affirmatively authorizes a prosecutor to take investigatory statements outside the confines of rule 14(h), due process of law is not offended when a prosecutor chooses to do so.

In fact, the record indicates that Parsons benefited from the statements. The habeas court found it likely that the prosecutor took the statements before defense counsel was appointed, thereby preserving information for Parsons when it was fresh in the minds of two critical witnesses. Likewise, defense counsel used Mrs. Ernest's sworn statement at the sentencing hearing for impeachment purposes. Parsons enjoyed the benefits of the sworn statements at trial without objection but now argues that taking the statements violated his right to due process. This inconsistency smacks of invited error, which is "procedurally unjustified and viewed with disfavor." *State v. Tillman,* 750 P.2d 546, 560–61 (Utah 1987); *see, e.g., State v. Smith,* 776 P.2d 929, 932 (Utah Ct.App.1989) ("A defendant cannot lead the court into error by failing to object and then later, when he is displeased with the verdict, profit by his actions.").

■ Parsons' Sixth Amendment claims must also fail. The "primary object of the constitutional right of confrontation is to prevent depositions and ex parte affidavits from being used against the accused at trial in lieu of personal examination and cross-examination of the witness against him." *State v. Anderson,* 612 P.2d 778, 785 (Utah 1980). The statements in question were not used in place of personal examination. Both Williams and Mrs. Ernest testified at the sentencing hearing, and Parsons had full opportunity to confront them at that time.

■ Parsons argues that the threat of perjury prosecution may have prevented Williams and Mrs. Ernest from deviating from their sworn statements when subjected to cross-examination at the sentencing hearing. He contends that this chilling of truthful testimony would not have occurred if the prosecutor had not placed Williams and Mrs. Ernest under oath when he took their statements. We are not persuaded. Parsons' argument presumes that Williams and Mrs. Ernest gave false statements to the prosecutor and that neither the oath nor the threat of perjury prosecution deterred them from doing so. The more probable presumption is that the oath had its intended effect. The purpose of the oath is to "ensure that the

---

4. It appears that the prosecutor was using "deposition" in this broad sense when he informed Williams and Mrs. Ernest that he was going to take their deposition.

affiant consciously recognizes his or her legal obligation to tell the truth." 58 Am.Jur.2d *Oath and Affirmation* § 6 (1989). It is regarded as the "highest test of truth" and is the "instrument appropriated by the law for the ascertainment of the truth in judicial investigations." *Id.* Thus, the oath and its attendant penalties for false swearing are the best assurance that the investigatory statements of Williams and Mrs. Ernest were true.[5] By taking the statements under oath, the prosecutor did not chill truthful testimony at the sentencing hearing. Rather, he ensured that the testimony of both witnesses would comport with their prior *truthful* statements.

Furthermore, Parsons' claims are at best speculative. He has not shown that Williams or Mrs. Ernest would have testified differently at the sentencing hearing had their initial sworn statements not been taken under oath. Therefore, we must conclude that any benefit Parsons might have gained by having counsel present when the prosecutor took the statements could also have been realized during cross-examination at the sentencing hearing. For these reasons, we hold that the taking of investigatory statements under oath by the prosecution without notice to the defense did not violate Parsons' federal rights to counsel, to confront witnesses, or to due process. U.S. Const. amends. VI, XIV.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ As explained above, absent the existence of unusual circumstances, a "party may not raise issues in a habeas corpus petition that could or should have been raised on direct appeal." *Fernandez v. Cook,* 783 P.2d 547, 549 (Utah 1989). We have held that unusual circumstances exist when trial counsel represented the defendant on direct appeal and the defendant in a subsequent habeas proceeding contends that he had ineffective assistance of counsel at trial, on appeal, or both. *Id.* at 549–50. The reason for this

rule is that trial counsel cannot reasonably be expected to raise the issue of his or her own incompetence on appeal. Because the same attorney represented Parsons both at trial and on direct appeal, Parsons' claims of ineffective assistance are properly before us.

Parsons argued thirteen counts of ineffective assistance of counsel in the habeas court, eight of which he raises on this appeal. Specifically, he contends that his counsel (1) failed to object to and raise on appeal the prosecutor's taking of sworn statements without notice to the defense, (2) failed to conduct adequate pretrial investigation, (3) failed to object to or raise on appeal the prosecutor's refusal to consent to waiving the preliminary hearing, advising Parsons instead to plead guilty without obtaining any meaningful benefit in return, (4) failed to adequately explore contact between a juror and a prosecution witness, (5) failed to file a formal discovery motion, (6) failed to spend adequate time with Parsons in preparation, (7) failed to conduct adequate voir dire, and (8) failed to object to the special verdict form. Parsons points to these same allegations as evidence of cumulative error.

In *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-part test for determining when a defendant's Sixth Amendment right to effective assistance of counsel has been violated. We have adopted that test as follows:

> To prevail, a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant.

*Bundy v. Deland,* 763 P.2d 803, 805 (Utah 1988); *see, e.g., State v. Templin,* 805 P.2d 182, 186–87 (Utah 1990); *State v. Carter,* 776 P.2d 886, 893 (Utah 1989); *State v. Frame,* 723 P.2d 401, 405 (Utah 1986).

---

**5.** Section 78–24–17 of the Utah Code sets out the form of the oath as follows: "You do solemnly swear (or affirm) that the evidence you shall give in this issue (or matter) pending between _____ and _____ shall be the truth, the whole truth, and nothing but the truth, so help you God (or, under the pains and penalties of perjury)."

In assessing counsel's performance under the first component of the test, we recognize " 'the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant.' " *Templin,* 805 P.2d at 186 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065). For this reason, a defendant must "overcome the strong presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment." *State v. Bullock,* 791 P.2d 155, 159–60 (Utah 1989), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990).

To show prejudice under the second component of the test, a defendant must proffer sufficient evidence to support "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Templin,* 805 P.2d at 187; *Carter,* 776 P.2d at 894 n. 30. When a defendant challenges a death sentence, "the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069. Reasonable probability means a probability sufficient to undermine confidence in the reliability of the sentence. *Id.; Frame,* 723 P.2d at 405.

■ Parsons urges us to "abandon the second prong of the *Strickland* test." He argues that showing counsel's professionally unreasonable conduct ought to be sufficient to establish a violation of the right to effective assistance of counsel. Surprisingly, he relies on our decision in *Templin,* 805 P.2d at 186, where we specifically held that a "defendant has the burden of meeting both parts of [the *Strickland* ] test."

We will not abandon one part of the Supreme Court's two-part analysis. The requirement that a defendant affirmatively prove prejudice is grounded in the very purpose of the Sixth Amendment right to counsel—"to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland,* 466

U.S. at 691–92, 104 S.Ct. at 2067. As the Supreme Court recently explained:

"[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guaranty is generally not implicated."

*Lockhart v. Fretwell,* —— U.S. ——, —— ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 188–89 (1993) (quoting *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984)). Unless a defendant shows both deficient conduct of counsel and prejudice, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the *result* unreliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064 (emphasis added).

Absent the prejudice requirement, a defendant could show ineffective assistance merely by demonstrating that counsel's errors fell below an objective standard of reasonableness. Attorney errors would be categorized according to likelihood of prejudice rather than actual effect on the proceeding itself. This would provide a windfall to many defendants because errors of counsel "come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." *Id.* at 693, 104 S.Ct. at 2067. Legal representation that is "unprofessional in one case may be sound or even brilliant in another." *Id.* The "prejudice" component of the *Strickland* test prevents this potential windfall by insisting on a nexus between the deficient performance of counsel and the reliability of the verdict or sentence.

For these reasons, we have consistently required defendants claiming ineffective assistance of counsel to affirmatively prove both prongs of the *Strickland* test to prevail, *Fernandez v. Cook,* 870 P.2d 870, 874 (Utah 1993); *State v. Tyler,* 850 P.2d 1250, 1253–54 (Utah 1993); *Templin,* 805 P.2d at 186–87; *Bullock,* 791 P.2d at 159; *Carter,* 776 P.2d at 893; *State v. Verde,* 770 P.2d 116, 118 n. 2 (Utah 1989); *Bundy,* 763 P.2d at 805; *State v. Lovell,* 758 P.2d 909, 913 (Utah 1988);

*Frame,* 723 P.2d at 405, and we will continue to do so.

As an alternative to abandoning the prejudice requirement of the *Strickland* analysis, Parsons urges us to "limit its application" to circumstances under which a defendant "might reasonably be expected" to meet the requirement. In his view, this limitation is necessary because incarcerated, indigent defendants do not have the resources necessary to show that absent counsel's errors the result of their trial or sentencing hearing would have been different. Parsons also contends that some issues simply do not lend themselves to a showing of prejudice. While we recognize that the *Strickland* test imposes a "difficult burden" on defendants, *Tyler,* 850 P.2d at 1259, we cannot adopt his proposed limitations.

■ In effect, Parsons is requesting that prejudice be presumed because of his indigent status. In *Strickland,* the Supreme Court recognized that "in certain Sixth Amendment contexts, prejudice is presumed." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. These circumstances include the "[a]ctual or constructive denial of the assistance of counsel altogether," as well as "various kinds of state interference with counsel's assistance." *Id.* Prejudice may also be presumed where counsel had a conflict of interest.[6] *Id.* The indigent status of a defendant is not expressly enumerated by the Supreme Court as a circumstance when prejudice will be presumed. Moreover, we note that the recognized circumstances for presuming prejudice arise, not from the status of the defendant, but from the state's interference with the right to counsel and the attorney's duty of loyalty. In deciding ineffective assistance allegations, our ultimate focus must be the effect of counsel's conduct on the reliability of the proceeding, not the defendant's personal characteristics.

Before applying the *Strickland* test to each of Parsons' ineffective assistance claims, we note that it is not necessary for us "to address both components of the inquiry if [he] makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *see, e.g., Carter,* 776 P.2d at 893; *Bundy,* 763 P.2d at 805–06. When it is "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," we will do so without addressing whether counsel's performance was professionally unreasonable. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *Carter,* 776 P.2d at 893; *Bundy,* 763 P.2d at 805–06.

**1. Failure to Object to Sworn Statements**

As explained above, the prosecutor's taking sworn statements without giving notice to the defense did not violate Parsons' rights to counsel, to confront witnesses, or to due process. Therefore, counsel's failure to object or to raise the issue on appeal was not professionally unreasonable.

**2. Substandard Investigation**

■ Parsons has consistently maintained that he reacted violently to Ernest's sexual advances. He contends that this was the "primary mitigating circumstance" and that his counsel failed to adequately investigate the victim's homosexual tendencies. Specifically, he argues that his counsel should have requested an autopsy examination of the victim and used the private investigator provided by the State. While we fail to see how this evidence is mitigating, we will assume for purposes of argument that it is.

Parsons cannot meet the prejudice prong of the *Strickland* test simply by identifying unexplored avenues of investigation. Rather, he must demonstrate a reasonable probability that further investigation would have yielded sufficient information to alter the

---

**6.** As a constitutional matter, a conflict of interest will not give rise to a presumption of prejudice unless a defendant shows that counsel " 'actively represented conflicting interests' " and that " 'an actual conflict of interest adversely affected his lawyer's performance.' " *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). However, pursuant to our "inherent supervisory power over the courts," we may presume prejudice in circumstances where it is "unnecessary and ill-advised to pursue a case-by-case inquiry to weigh actual prejudice." *State v. Brown,* 853 P.2d 851, 857, 859 (Utah 1992) (while it may or may not be constitutionally impermissible, representation of a defendant by a part-time city prosecutor is prejudice per se).

outcome of his sentencing hearing. Aside from Parsons' testimony, nothing in the record indicates that the victim had homosexual inclinations. At the penalty hearing, Mrs. Ernest emphatically testified that her late husband had no homosexual tendencies. She stated that after their separation, her husband began seeing two other women and that he previously had an affair with a woman in Texas. In her sworn statement to the prosecutor, Mrs. Ernest stated that her husband had a girlfriend at the time she met him and that during their marriage he associated with another attractive woman whom he kissed and cared for very much. Bruce Opp, a friend of the victim, testified at the penalty hearing that "homosexuality was the farthest thing from [the victim's] mind" and that the victim dated other women after his separation from Mrs. Ernest. The victim's father-in-law testified that homosexuality was "very distasteful" to Ernest and something he did not want to be a part of. Finally, after investigation, the prosecution concluded that "everything about the victim" indicated that he was "a completely heterosexual family-man." In light of this overwhelming evidence procured from Ernest's closest associates, it is unlikely that further investigation by defense counsel would have yielded information to the contrary.

### 3. Entry of Guilty Plea

Parsons alleges two instances of ineffective assistance concerning his guilty plea. First, he contends that counsel advised him to plead guilty without securing any meaningful benefit in return. Second, he asserts that the prosecution improperly induced his guilty plea by refusing to waive the preliminary hearing and that defense counsel failed to object to this procedural duress or raise it on appeal.

In proving that counsel's conduct fell below an objective standard of reasonableness, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. In other words, Parsons "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound

trial strategy.'" *Id.* He has not overcome this presumption.

The record indicates that the advice to plead guilty was part of a legitimate trial strategy and was therefore professionally reasonable. At the habeas proceeding, former defense counsel testified that a guilty plea would blunt the thrust of the evidence presented to the sentencing jury by not allowing the State to emphasize and reemphasize the details of the crime during the guilt phase. In addition, the plea would prevent the emotional momentum of the guilt phase from pouring over into the jury's sentencing deliberations. Counsel discussed this strategy with Parsons in detail.

The habeas court found, and we agree, that "it was a legitimate trial strategy to decide that it was not to Parsons' advantage to have the same jury consider both the evidence related to guilt or innocence ... and then consider the evidence related to punishment." This court "will not review counsel's tactical decisions simply because another lawyer, e.g., appellate counsel, would have taken a different course." *State v. Jones,* 823 P.2d 1059, 1063 (Utah 1991). Likewise, whenever there is "a legitimate exercise of professional judgment in the choice of trial strategy, the fact that it did not produce the expected result does not constitute ineffectiveness of counsel." *Bullock,* 791 P.2d at 160; *see, e.g., Tyler,* 850 P.2d at 1258 (a defendant is "not guaranteed successful assistance of counsel," and "competency of counsel is not measured by the result").

In addition, Parsons received benefits that were meaningful to him in exchange for his plea, the most important of which was the termination of the preliminary hearing. According to the record, he had "no desire whatsoever to go through the preliminary hearing." Defense counsel asked the prosecutor on several occasions to waive the hearing, but the prosecutor refused. An hour and a half into the hearing, Parsons became "very agitated and upset" and "did not want [the hearing] to proceed." He communicated this desire to counsel and authorized his counsel to "just do whatever it takes to get this thing stopped." The prosecutor testified

that Parsons stood and said in open court, "I did it, they know I did it. Why are we going through with all of this? I want to stop this now. I don't care what you have to do. Stop it." The proceedings recessed, and Parsons decided to plead guilty in accordance with the trial strategy outlined above. The record simply belies his contention that terminating the preliminary hearing was not a meaningful benefit to him.

Finally, Parsons argues that the prosecutor refused to consent to waive the preliminary hearing as a means of inducing him to enter a guilty plea and that his counsel should have objected to this tactic or insisted on Parsons' right to waive the hearing without the prosecutor's consent. Such a course would have been in direct conflict with rule 7 of the Utah Rules of Criminal Procedure. Rule 7 provides in part:

> During the initial appearance before the magistrate, the defendant shall be advised of his right to a preliminary examination. If the defendant waives his right to a preliminary examination, and *the prosecuting attorney consents*, the magistrate shall order the defendant bound over to answer in the district court.

Utah R.Crim.P. 7(g)(1) (emphasis added). The rule imposes no conditions on the prosecutor's right to withhold consent. Therefore, defense counsel's failure to object to the prosecutor's refusing consent was not ineffective assistance.

Furthermore, Parsons has failed to show the requisite prejudice. Where a defendant challenges a guilty plea on grounds of ineffective assistance of counsel, he or she must show "a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In other words, counsel's deficient performance must have "affected the outcome of the plea process." *Id.* There is no evidence in the record that Parsons ever intended to go to trial. On the contrary, he consistently maintained his guilt, admitting in open court at the preliminary hearing that he killed the victim. Likewise, he has not sought to withdraw his guilty plea but argues only to have his sentence vacated. Because he has never desired to go to trial, we cannot conclude that he was prejudiced by counsel's advice to plead guilty.

### 4. Juror–Witness Contact

During the penalty hearing, a juror conversed briefly with a prosecution witness. Parsons contends that his counsel's failure to interrogate both the juror and the witness and to preserve the issue for direct appeal constituted ineffective assistance of counsel. We disagree.

Parsons raised this issue on direct appeal, arguing that the juror-witness contact tainted the jury. We dismissed this argument, refusing to allow Parsons to "vacate his sentence by alleging on appeal prejudicial error" that he had "affirmatively, knowingly, and intentionally waived at the sentencing proceeding." *State v. Parsons*, 781 P.2d 1275, 1285 (Utah 1989). More importantly, however, we concluded that "[e]ven analyzing the facts under the standards provided in *State v. Pike*, 712 P.2d 277, 279–81 (Utah 1985), *we could find no error." Id.* (emphasis added). Because no error resulted from the juror's contact with the prosecution witness, counsel's failure to interrogate the witness cannot be deemed ineffective assistance. *Codianna v. Morris*, 660 P.2d 1101, 1109 (Utah 1983) ("The failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance.").

### 5. Failure to File Discovery Request

Parsons next contends that his counsel's failure to move for formal discovery was ineffective assistance. Rule 16 of the Utah Rules of Criminal Procedure provides that the prosecutor shall disclose "to the defense upon request" certain "material or information of which he has knowledge." Utah R.Crim.P. 16(a)(1)–(5). The "request" contemplated in rule 16 is a written request for discovery filed at least five days prior to trial as provided for in rule 12. Utah R.Crim.P. 12(b)(3); *State v. Booker*, 709 P.2d 342, 346 (Utah 1985). Rule 16, however, provides for informal discovery "when convenience reasonably requires." Utah R.Crim.P. 16(e). Informal discovery permits the prosecutor or

defense to "make disclosure by notifying the opposing party that material and information may be inspected, tested or copied at specified reasonable times and places." *Id.*

The discovery in this case was informal. The prosecutor had an "open file policy" pursuant to which all evidence and documents were "given to the defense, simultaneously with [the prosecutor's] receiving it." At the habeas proceeding, the prosecutor testified that "everything [he] had was given to [defense counsel] and Mr. Parsons from day one." Likewise, defense counsel testified that the State did not use any evidence at trial that he had not seen before.

To prove prejudice, Parsons must show that filing a formal discovery motion would have yielded exculpatory information that the "open file policy" did not yield. He has not done so. Admittedly, a defendant who does not file a written request for discovery under rule 12 cannot on appeal assign error to the failure of the prosecutor to disclose the "material or information" described in rule 16(a)(1) to (5). *Booker*, 709 P.2d at 346. However, Parsons has not proffered any evidence that such undisclosed material or information existed. Speculation that it exists is not sufficient to meet the prejudice component of the *Strickland* test. *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993) ("On many occasions, this court has reiterated that proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality.").

### 6. Inadequate Trial Preparation

Parsons contends that counsel spent inadequate time with him in preparing for the sentencing hearing. At the habeas proceeding, he testified that counsel spent only between four and five hours with him. Former defense counsel, on the other hand, testified that he spent about twenty hours with Parsons. Parsons argues that it is ineffective per se for counsel in a homicide case to meet with the defendant for between four and twenty hours.

We decline to determine what amount of time counsel must spend with a defendant to ensure that the representation does not fall below an objective standard of reasonableness. Clearly, the time period will vary with every case. Rather, we dismiss Parsons' argument because he has not shown prejudice. He has not proffered any evidence that counsel overlooked information critical to the defense as a result of spending too little time with him in preparation. In the absence of this evidence, we cannot find that the outcome of the sentencing hearing would have been different if defense counsel had spent more time with Parsons.

### 7. Failure to Conduct Adequate Voir Dire

Parsons argues that his counsel failed to conduct adequate voir dire. Specifically, he claims that while counsel asked the jurors *whether* they had heard or read anything about the case, he failed to ask them *what* they had heard or read. Thus, counsel did not create a record from which an appellate court could determine whether juror exposure to the media resulted in prejudice.

According to the record, the court asked the jurors whether and from what source they had heard or read anything about the case and whether they had formed an opinion as to the appropriate outcome. Three jurors had not been exposed to any media reports on the case. Seven had read articles in *The Spectrum*, the local newspaper. Of these seven, one had also heard radio reports and another had read an article in the *Deseret News*. Of the two remaining jurors, one had heard a television report, and the other, a radio report.

The court also asked whether the jurors could set aside any outside information and base their decision on the evidence presented in court. Each juror answered affirmatively. Finally, the court asked the jurors whether they as defendants would be willing to be tried by twelve persons just like themselves in light of their preexisting knowledge of the case. Each juror responded affirmatively.

Parsons has not demonstrated that further inquiry into each juror's exposure to media reports would have altered the outcome of his sentencing hearing. The media coverage to which five jurors had been exposed was limited to a single local newspaper. The juror who had heard a television report had

little memory of it, and three jurors had not heard or read anything at all. Parsons has not produced any evidence that the content of *The Spectrum* 's articles, the radio reports, and the television coverage predisposed the jurors to impose the death penalty. Thus, he has failed to show a reasonable probability that the outcome of his sentencing hearing would have been different but for counsel's failure to further inquire into the content of the media coverage to which the venire had been exposed.

## 8. The Special Verdict Form

On direct appeal, Parsons argued that the court "misled the jury by giving special verdict instructions and questions on aggravating circumstances while only generally instructing on mitigating circumstances." *Parsons,* 781 P.2d at 1279. He contended that the effect of the special verdict form was to mislead the jury so that it could find "only aggravating circumstances and no mitigating circumstances in determining his sentence." *Id.* He further argued that special verdict forms should be forbidden in capital sentencing proceedings or that courts should be required to give special verdict instructions on both aggravating and mitigating factors. *Id.* We rejected this argument, holding that giving special verdict questions on aggravating factors but not mitigating factors did not mislead the jury.

In the habeas proceeding, Parsons attacked the special verdict form a second time. The form contained three questions. The first asked whether the jury found beyond a reasonable doubt that the defendant committed the murder in the course of an aggravated robbery. The second asked whether the jury found beyond a reasonable doubt that the defendant intentionally killed the victim for pecuniary gain. The final question asked whether the jury similarly found that the defendant, "being a person on parole, knowingly possessed or had in his custody or under his control a firearm."

Parsons first argues that including the third question on the special verdict form—whether the jury could find beyond a reasonable doubt that the defendant, "being a person on parole, knowingly possessed or had in his custody or under his control a firearm"—was error because a parolee's possession of a firearm is not an aggravating factor enumerated in section 76–5–202. This fact, however, is immaterial and could not have prejudiced Parsons. In the penalty phase, the sentencer may consider any relevant facts in aggravation or mitigation of the penalty. *See* Utah Code Ann. § 76–3–207(2). Inclusion in section 76–5–202 is not a prerequisite for consideration by the sentencing body.

Parsons also contends that in addition to the three questions outlined above, the special verdict form should have asked the jury whether it could find beyond a reasonable doubt that the defendant, having been previously convicted of a felony involving the use or threat of violence to another person, intentionally or knowingly caused the death of another. He argues that omitting this aggravating factor "gave the jury an opportunity to find a cause for imposing the death penalty without recording any vote on the special verdict form." According to Parsons, counsel's failure to object on this ground constituted ineffective assistance. We disagree. Parsons' previous commission of a felony involving the use or threat of violence to another was the aggravating factor in section 76–5–202 that elevated his crime from second to first degree murder. It was this aggravating factor to which he pleaded guilty. Therefore, including it on the special verdict form would have been a superfluous formality, not an outcome-altering error.

Finally, Parsons contends that because an element of the crime of robbery is the "taking of personal property in the possession of another," then that crime will always be committed for pecuniary or other personal gain. Utah Code Ann. § 76–6–301. Section 76–5–202 of the Utah Code lists, among many others, the following two aggravating factors to be considered by the court or jury at sentencing:

(d) The homicide was committed while the actor was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, aggravated robbery, robbery....

(f) The homicide was committed for pecuniary or other personal gain.

Utah Code Ann. § 76–5–202(1) (Supp.1993). The special verdict form in this case listed both as potential aggravating factors. Parsons contends that the resulting effect of the special verdict form was to "split the single act of robbery into two potential aggravating circumstances ... when only one should have been presented for consideration." According to Parsons, this "double-counting" misled the jury to impose the sentence of death and should have been objected to by counsel.

In *Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 555, 98 L.Ed.2d 568 (1988), the United States Supreme Court held that the aggravating circumstance used in the sentencing phase of a trial can duplicate an element of the underlying offense without violating the Eighth Amendment of the federal constitution. Under the Utah sentencing scheme this type of double-counting occurs. Section 76–5–202 of the Utah Code enumerates several aggravating elements that elevate a homicide from second to first degree or aggravated murder. Utah Code Ann. § 76–5–202(1)(a)–(q) (Supp.1993). Section 76–3–207 permits the sentencing jury to consider these same elements as aggravating factors during the penalty phase of a trial. Utah Code Ann. § 76–3–207(3) (Supp.1993). Like the United States Supreme Court, we have held that counting a single aggravating circumstance in both the guilt and the penalty phase of a trial does not render Utah's sentencing scheme unconstitutional. *State v. Bishop,* 753 P.2d 439, 460 n. 65 (Utah 1988).

 However, Parsons raises a different kind of "double-counting." He contends that including both the robbery-murder factor and the pecuniary-gain factor on the special verdict form unfairly divided a single act of the defendant, aggravated robbery, into two aggravating factors. This double-counting differs from that declared constitutional in *Lowenfield* and *Bishop.* Here, the double-counting occurs solely in the penalty phase of the trial and involves, not the double-counting of a single aggravating factor, but the double-counting of a single act of the defendant.

In failing to object to the special verdict form on these grounds, counsel's performance fell below an objective standard of reasonableness. The Supreme Court has held that the discretion of sentencing juries must be "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). To achieve this channeled discretion, each aggravating factor "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983).

When considered together in aggravation, the robbery-murder factor and the pecuniary-gain factor do not narrow the class of defendants eligible for the death penalty. One element of the crime of robbery is the "taking of personal property in the possession of another." Utah Code Ann. § 76–6–301(1). Thus, robbery inherently comprises an attempt to gain pecuniarily. It is nonsensical to say that a defendant who commits a homicide during the commission of a robbery is somehow more deserving of the death penalty because he also committed the murder for pecuniary gain.

In addition, under the present scheme, defendants who commit a homicide in the course of a robbery will always begin the sentencing hearing with two aggravating factors against them for no other reason than that the underlying felony was robbery. *Engberg v. Meyer,* 820 P.2d 70, 89 (Wyo. 1991); *Provence v. State,* 337 So.2d 783, 786 (Fla.1976), *cert. denied,* 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Defendants who commit a homicide in the course of any other enumerated felony are not similarly disadvantaged. This is inherently unfair. In the words of the Mississippi Supreme Court, "When life is at stake, a jury cannot be allowed the opportunity to doubly weigh the commission of the underlying felony and the motive behind [the] underlying felony as separate aggravators." *Willie v. State,* 585 So.2d 660, 681 (Miss.1991); *see Cook v. State,* 369 So.2d 1251, 1256–57 (Ala.1979); *People v. Mickey,* 54 Cal.3d 612, 286 Cal.Rptr. 801, 835, 818 P.2d 84 (1991) (modifying *People v.*

*Bigelow,* 37 Cal.3d 731, 209 Cal.Rptr. 328, 691 P.2d 994 (1984)); *Provence,* 337 So.2d at 786; *State v. Rust,* 197 Neb. 528, 250 N.W.2d 867, 873–74, *cert. denied,* 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977); *Engberg,* 820 P.2d at 89.

For these reasons, in the future, jury instructions or special verdict forms which contain either of the two murder-robbery factors in section 76–5–202(1)(d) should not contain the pecuniary-gain factor as well. Otherwise, a defendant is essentially condemned "twice for the same culpable act." *Cook,* 369 So.2d at 1256. As a general rule, courts should construe the aggravating factors in section 76–5–202 so as to "minimize those cases in which multiple circumstances will apply to the same conduct, thereby reducing the risk that multiple findings on [aggravating] ... circumstances will prejudice the defendant." [7] *People v. Bigelow,* 37 Cal.3d 731, 209 Cal.Rptr. 328, 340, 691 P.2d 994, 1006 (1984). If the aggravating factors in section 76–5–202 are to "genuinely narrow the class of persons eligible for the death penalty," this rule of construction must be applied. *Zant,* 462 U.S. at 877, 103 S.Ct. at 2742.

However, turning to the prejudice prong of the *Strickland* test, we do not find a reasonable probability that if counsel had objected to the double-counting described above, the sentencing jury would have concluded that "the balance of aggravating and mitigating circumstances did not warrant death."

*Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069. The jury was instructed sufficiently to cure any prejudice that may have resulted from the improper double-counting on the special verdict form.

The court instructed the jury to answer the special verdict questions "prior to entering [its] verdict" and as an "aid in [its] deliberations." Further, the court instructed the jury that "[i]f the final vote of the jury members is 'No' or less than a unanimous 'Yes' as to any special verdict question, then you may not consider the elements of that individual question as aggravating circumstances." By requiring a "unanimous determination on each of three aggravating factors before they could be weighed against the mitigating factors," the special verdict form operated as a "safeguard" to Parsons. *State v. Parsons,* 781 P.2d 1275, 1280 (Utah 1989).

In addition, the court specifically instructed the jury that it must weigh the totality of the mitigating factors against the totality of the aggravating factors, "*not in terms of the relative numbers* of the aggravating and mitigating factors, but in terms of their respective *substantiality and persuasiveness* " (emphasis added). This instruction is in "meticulous compliance" with the standards we set forth in *State v. Wood,* 648 P.2d 71, 83–85 (Utah), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982); *Parsons,* 781 P.2d at 1280.

---

**7.** As worded, section 76–5–202 arguably creates this risk. A careful reading reveals that multiple aggravating factors may frequently apply to the same conduct of a defendant under subpart (d). For example, a person commits aggravated kidnapping when he or she "intentionally or knowingly, without authority of law and against the will of the victim, ... detains or transports the victim with intent to hold for ransom." Utah Code Ann. § 76–5–302. If the perpetrator kills the victim in the process, section 76–5–202 arguably splits the single act of aggravated kidnapping into two aggravating factors—aggravated kidnapping under subpart (d) and pecuniary gain under subpart (f). Utah Code Ann. § 76–5–202(1)(d), (f).

Likewise, a person is guilty of aggravated arson if "by means of fire or explosives he [or she] intentionally and unlawfully damages any structure or vehicle when any person not a participant in the offense is in the structure or vehicle."

Utah Code Ann. § 76–6–103(1). If two persons are in the structure but only one dies, the single act of aggravated arson may give rise to two aggravating factors in section 76–5–202: The homicide occurred in the course of aggravated arson and "created a great risk of death to a person other than the victim." Utah Code Ann. § 76–5–202(1)(c), (d).

Further, section 76–5–202 now provides that aggravated murder, formerly "first degree murder," occurs when the "defendant committed ... the homicide pursuant to an agreement or contract for remuneration." Utah Code Ann. § 76–5–202(g) (Supp.1993). Where the defendant contracts for monetary remuneration in exchange for the killing, that single act may implicate both the pecuniary-gain factor under subsection (f) and the contract- or agreement-for-remuneration factor under subsection (g). Utah Code Ann. § 76–5–202(f), (g) (Supp.1993).

In deciding whether Parsons was prejudiced, we must conclude that the jury did as it was instructed to do. No defendant is entitled "to the luck of a lawless decision-maker." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068. Therefore, our assessment of prejudice proceeds "on the assumption that the decision maker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* Because the jury did not consider any aggravating factor without first finding that it existed beyond a reasonable doubt and because the jury weighed the persuasiveness, not the number, of aggravating factors, we cannot find that eliminating the pecuniary-gain question from the special verdict form would have changed the outcome of Parsons' hearing.

## CUMULATIVE ERROR

■ Because Parsons has failed to establish any errors of counsel that prejudiced his right to a fair trial, the doctrine of cumulative error does not apply. *Bundy v. Deland,* 763 P.2d 803, 806 (Utah 1988) (citing *State v. Ellis,* 748 P.2d 188, 191 (Utah 1987)); *State v. Rammel,* 721 P.2d 498, 501–02 (Utah 1986).

## RIGHT TO STATE–COMPENSATED COUNSEL IN HABEAS PROCEEDINGS

■ In his habeas proceeding, Parsons argued that under the federal and state constitutions, defendants pursuing habeas relief for the first time were entitled to counsel compensated by the state. The United States Supreme Court has held that neither the Due Process Clause nor the equal protection guarantee of meaningful access requires a state to provide counsel for indigent defendants seeking postconviction relief. *Pennsylvania v. Finley,* 481 U.S. 551, 555–56, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) (citing *Ross v. Moffitt,* 417 U.S. 600, 610–11, 94 S.Ct. 2437, 2443–44, 41 L.Ed.2d 341 (1974)). This rule applies with equal force to defendants convicted of capital crimes. *Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 2770, 106 L.Ed.2d 1 (1989).

We decline to address and decide in this proceeding whether under the Utah Constitution appointed counsel in a first habeas proceeding has a right to be compensated by the state. The district court opined that it was an issue which should be resolved legislatively. If that course is not to be followed and the question is to be resolved by the judiciary because of its far-reaching impact, it should be addressed in a proceeding where all affected parties, organizations, agencies, and entities are invited to participate in the briefing and oral argument, not limited to the parties of a single case such as we now have before us.

In denying compensation to appointed counsel, we are not unmindful of the generous contribution of their time and resources to this case. We thank them for the high quality of their professional effort in behalf of Parsons.

The denial of the writ is affirmed.

STEWART, Associate C.J., and HALL, J., concur.

ZIMMERMAN, Chief Justice, concurring:

I concur in Justice Howe's opinion. However, I write to note that we continue to sidestep an issue that cannot be ignored much longer, i.e., whether those who have been convicted of a crime but cannot afford a lawyer should have a right to paid counsel in connection with their initial postconviction proceeding.

The traditional view on this issue, epitomized by the United States Supreme Court decisions cited by Justice Howe, is founded on a number of fictions. Among them are the following: the assertion that postconviction proceedings are "civil" and not an integral part of the usual criminal prosecution; the refusal to acknowledge that a number of legal doctrines, most notably the ineffectiveness of counsel rulings by the United States Supreme Court, have virtually mandated at least one postconviction evidentiary hearing and subsequent appeal before even the most diligent defendant's legal remedies are exhausted; and the legal fiction, indeed deliberate fantasy, that these extraordinary, complex legal doctrines and the associated post-

conviction proceedings can be handled competently by an unrepresented indigent defendant.

Much of the successful postconviction writ practice that currently incites public wrath against the criminal justice system can be traced directly to the fact that the system persists in refusing to assure that a defendant has adequate counsel in the initial postconviction proceeding. In the face of this fact, it is hardly surprising that the courts remain reluctant to shut the courthouse doors on defendants who have never had a fair opportunity to fully litigate their claim to rights bestowed upon them by the federal and state constitutions. *See, e.g., Fernandez v. Cook,* 783 P.2d 547 (Utah 1989) (holding that ineffectiveness-of-counsel claim can be raised for first time in postconviction proceeding when trial counsel handled initial appeal from conviction).

The public, the judiciary, and even the prosecutorial agencies would be better served if we took our collective heads out of the sand and acted to ensure free counsel to indigent defendants for one omnibus postconviction proceeding. Today may not be the day, nor this the case, on which to address the constitutional questions raised by the current state of affairs. But the time draws nigh when we will be unable to continue avoiding reality in the name of outworn legal fictions. I acknowledge that there may be a number of unspoken administrative and financial considerations that support the present state of affairs. But none of them can withstand scrutiny if the "criminal justice" system is to be worthy of its name. *See Gerrish v. Barnes,* 844 P.2d 315, 321 (Utah 1992) (Zimmerman, J., concurring).[1]

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, C.J.

HALL, J., acted on this case prior to his retirement.

---

1. There are recent indications that the Utah Bar in general may be taking note of problems with the present system that criminal lawyers have known about for a long time. *See* Randy L. Dryer, *Habeas Corpus Practice In Utah—A Franz Kafka Mind Boggler?,* Utah Bar J., May 1993, at 4.