ORME, Judge
(concurring in part and concurring in the result in part):
{ 49 I concur in section I of the lead opinion but concur only in the result reached in section II. Given the difficulties in determining the adequacy of trial counsel's performance based on conflicting affidavits and given the lack of an evidentiary hearing below to resolve the conflict, I am persuaded that the best course is to resolve the ineffective assistance claim raised by Kaykeo [12] purely on the prejudice prong, as our cases allow us to do. See, e.g., State v. Arguelles, 921 P.2d 439, 441 (Utah 1996) ("Unless [the defendant] has demonstrated that he was prejudiced by his trial counsel's performance, we need not decide whether that performance was deficient."); State v. Strain, 885 P.2d 810, 814 (Utah Ct.App.1994) ("[In cases in which it is 'easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,' we will do so without addressing whether counsel's performance was professionally unreasonable.") (quoting Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
50 The requisite showing of prejudice in an ineffective assistance claim cannot be established by simply "identifying unexplored avenues of investigation." Parsons v. Barnes, 871 P.2d 516, 523 (Utah 1994). Instead, a defendant must show a reasonable probability that further investigation would have resulted in a more favorable outcome at trial. See id. at 528-24. While Kaykeo avers that his trial counsel failed to investigate and call witnesses capable of corroborating his version of the events, Kaykeo wholly fails to establish that the added testimony of these witnesses would create a reasonable probability of acquittal. Even assuming that (1) these potential witnesses were subject to subpoena at the time of trial or that they were ready, willing, and able to testify voluntarily and (2) that there was no obvious obstacle to these witnesses being believed by the jury-e.g., prior criminal history admissible under rule 609 of the Utah Rules of Evidence-it is doubtful that the story these witnesses were ostensibly prepared to tell was even possible, let alone plausible.
151 According to the declarations of the two uncalled witnesses, Kaykeo had been at a party approximately five miles from where the shootings occurred for the entire evening and did not leave until Rasabout appeared and asked Kaykeo to be his designated driver. The uncalled witness who claims he drove behind them after they left the party declared that Rasabout's vehicle, which Kay-keo was driving, never left his sight and that he did not see or hear any gunshots coming from the vehicle before they were pulled over. This proposed testimony, according to Kaykeo, supposedly substantiates his unconvincing narrative that Rasabout, after engaging in two drive-by shooting attacks on the same house, immediately drove five miles to a party with the hope of finding a designated driver to take him home and then-to add insult to injury-allowed his unwitting driver to go right past the home he had riddled with bullets only minutes before. To believe such a fantastical tale, a jury would also have to believe that although Rasabout formed the plan to drive five miles in search of a designated driver, he did not have the good sense to direct that driver away from the seene of his just-completed crimes.[13]
*639 {52 The timing of all these events only serves to exacerbate the utter implausibility of Kaykeo's alibi. The police arrived only minutes after the second round of shooting took place, and within a few moments of their arrival Kaykeo and Rasabout drove by and were pulled over. It would have seemed impossible to the jury, as it does to me, that, within such a minuscule time frame, Rasa-bout was able to drive five miles up the road, enter a party, locate Kaykeo, get Kaykeo to agree to drive him home, leave the party, and then head five miles back to where the shooting took place as a mere coincidence of heading for home. Even assuming that Rasabout was able to extricate Kaykeo from the party almost instantaneously, and without allowing any time for Kaykeo to say his goodbyes or gather his belongings, it is completely implausible, if not impossible, that even the round trip drive could be completed in that small amount of time.[14]
T 53 In my view, the proposed testimony of the uncalled witnesses does nothing to alleviate the many failings of Kaykeo's outlandish alibi defense. Consequently, I would resolve Kaykeo's ineffective assistance claim entirely on the prejudice prong of the Strickland test. He simply was not prejudiced by the jury's being spared these tall tales.

. Rasabout does not join in Kaykeo's cross appeal or otherwise challenge the jury's verdict against him. The jury's determination that Rasa-bout fired the shots at the house, therefore, must be taken as a given in evaluating Kaykeo's claim.

. Kaykeo testified that he and Rasabout were close, even describing Rasabout as a "cousin." *639 Given that, the jury would have to assume that Rasabout was completely indifferent to the obvious risk that his close friend could be implicated in his crime if they drove past the scene of the crime on their way home.

. Kaykeo and Rasabout were pulled over and arrested approximately 15 minutes after the shooting occurred. Taking judicial notice of the times and distances involved, as confirmed by MapQuest, the travel time from the scene of the crime to the party and then back-with no delay at the party once there-is 24 minutes. By those calculations, Kaykeo and Rasabout would have arrived roughly 10 minutes late to their own arrest.