John Patrick BRUNER, Plaintiff
and Appellant,

v.

Warden Scott CARVER, Defendant
and Appellee.

No. 940371.

Supreme Court of Utah.

July 9, 1996.

Todd M. Shaughnessy, Salt Lake City, for plaintiff.

Jan Graham, Atty. Gen., Joanne C. Slotnik, Angela Miklos, Asst. Attys. Gen., Salt Lake City, for defendant.

HOWE, Justice:

Plaintiff John Patrick Bruner appeals from a denial of his petition for extraordinary post-conviction relief.

## I. BACKGROUND

In May 1989, a jury found Bruner guilty of criminal homicide, a capital offense, and burglary, a second degree felony. He was sentenced to a minimum mandatory term of life imprisonment on the homicide charge and to a consecutive term of one to fifteen years on the burglary offense.

Bruner's trial attorneys, Frances Palacios and Lynn Brown of the Salt Lake Legal Defender Association (LDA), filed a timely notice of appeal with the district court. Palacios sent Bruner a letter in which she explained that the appeal was going forward, and she filed a docketing statement with this court, outlining the issues she intended to present on appeal.

On August 4 or 5, 1989, Bruner left a message with a secretary at LDA that he "was thinking about withdrawing the appeal." The parties dispute as to what, if any, discussions took place between Palacios and Bruner regarding the withdrawal of the appeal.[1] Nevertheless, on August 9, 1989, a courier from LDA delivered an affidavit to Bruner at the Utah State Prison which he signed before a notary. The affidavit stated in full:

I, JOHN PATRICK BRUNER, being first duly sworn according to law, on my oath depose and say:

1. I am the appellant in the above-entitled case.

2. It is my desire to withdraw my appeal at this time.

3. I am doing this knowingly and voluntarily and have not been threatened or otherwise induced in any way to withdraw this appeal.

4. I have consulted with my attorney with respect to this withdrawal and I feel

---

1. It is undisputed that Lynn Brown, who served as co-counsel during Bruner's trial, and Joan Watt, who was in charge of Bruner's appeal, did not discuss with Bruner the withdrawal of his appeal.

it is in my best interest not to pursue the appeal.

 5. I understand that once this appeal is withdrawn, it cannot be reinstated.

Brown and Palacios submitted to this court the affidavit and a motion to withdraw the appeal, to which the State had stipulated. The clerk of this court dismissed the appeal.

In February 1994, Bruner filed this action, seeking to reinstate his direct appeal on the basis of his appellate counsel's failure to properly advise him regarding the withdrawal of the appeal. The trial court conducted a two-day evidentiary hearing. Prior to the hearing, Bruner filed a motion for appointment of counsel, which the trial court denied. Bruner proceeded pro se.[2] After the hearing, the court denied Bruner's request for relief, holding that he had failed to demonstrate any deficient performance on the part of his appellate counsel and that he had knowingly and voluntarily withdrawn his direct appeal. Bruner appeals.

## II. ANALYSIS

### A. Due Process

Bruner contends that the withdrawal of his direct appeal was inconsistent with due process requirements because (1) the district court required him to bear the burden of proving that the withdrawal of his direct appeal was not knowing and voluntary, (2) the affidavit withdrawing his direct appeal did not adequately articulate the rights he was surrendering or the conditions under which it was executed, and (3) his direct appeal was dismissed without any judicial involvement.[3] Each of these issues presents a question of law that we will review for correctness. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994). We address each in turn.

■ Bruner's burden-of-proof argument fails because he misconstrues the breadth of constitutional protections accorded petitioners in post-conviction hearings. Clearly the right of a criminal defendant to pursue a direct appeal is a fundamental constitutional right, Utah Const. Art. I, § 12; *id.* Art. VIII, § 5, and courts generally indulge every reasonable presumption against waiver of such a right. *Barnard v. Wassermann*, 855 P.2d 243, 247 (Utah 1993). However, the United States Supreme Court has held that "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." *Parke v. Raley*, 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (citation omitted); *see also Cuppett v. Duckworth*, 8 F.3d 1132, 1137 (7th Cir.1993), *cert. denied*, 510 U.S. 1180, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994). Thus, in the context of this petition for extraordinary relief, because the prior judgment carries a presumption of validity, the trial court correctly assigned to Bruner the burden of showing a constitutional violation.

In support of his argument, Bruner cites *State v. Sweet*, 90 Wash.2d 282, 581 P.2d 579 (1978) (en banc), in which the Washington Supreme Court rejected the prosecution's argument that the defendant should be required to show lack of waiver. *Id.*, 581 P.2d at 581. However, in *Sweet*, the defendant did not perfect an appeal after judgment. After conviction, he told his trial attorney that he wanted to appeal, but the attorney withdrew from the case without explaining to the defendant how to perfect his appeal. *Id.* at 580. The defendant was unable to secure the services of another attorney until after the time for filing the appeal had expired.

2. This court granted Bruner's motion for appointment of counsel on appeal.

3. Bruner does not indicate whether he is arguing under the due process clause of the federal or the Utah constitution. Rather, he generally contends that the withdrawal of his direct appeal "was not consistent with due process." He cites the Utah Constitution and a variety of state due process cases as support for his right to appeal. However, some of these cases apply a state constitution analysis, *see, e.g., State v. Sweet*, 90 Wash.2d 282,

581 P.2d 579, 581 (1978) (en banc); others apply a federal constitution analysis, *see, e.g., Barnard v. Wassermann*, 855 P.2d 243, 247 (Utah 1993); others consider both constitutions, *see, e.g., State v. Babbel*, 813 P.2d 86, 87 (Utah 1991); and still others do not refer specifically to either constitution. *See, e.g., Boucofski v. Jacobsen*, 36 Utah 165, 172, 104 P. 117, 120 (1909). In any event, we determine that our conclusions in section II.A are the same under either the federal or the state due process clause.

*Id.* at 581. Under those circumstances, where the defendant was not able to act on his right of appeal, the court concluded that the State had the burden of proving a knowing and willing relinquishment of the right to appeal and that it had failed to meet that burden. *Id.* at 584.

The instant case differs significantly from *Sweet.* Bruner did not fail to act on his right of appeal. To the contrary, his appeal was filed and was proceeding routinely until he personally requested that it be withdrawn. The district court's placement of the burden of proof on Bruner under these circumstances did not offend due process.[4]

▮ Bruner next contends that the affidavit withdrawing his appeal did not contain sufficient information either to inform Bruner of the rights he was surrendering or to allow a reviewing court to determine whether his actions were knowing and voluntary. He asserts that any affidavit withdrawing a direct appeal should (1) specifically list all rights waived, (2) explain the issues likely to have been raised on appeal, and (3) include some information concerning the defendant's ability to understand its contents and the defendant's competency to sign the affidavit. Bruner argues that withdrawing a direct appeal is similar to entering a guilty plea and should be accorded similar procedural protections. *See State v. Gibbons*, 740 P.2d 1309, 1313–14 (Utah 1987) (outlining strict requirements for acceptance of a guilty plea).

▮ Guilty plea affidavits are significantly more complex and philosophically different than withdrawals of direct appeals. Because a defendant gives up far less by withdrawing an appeal than by entering a guilty plea, the protections accorded the former process are logically more limited. When an accused pleads guilty, he gives up the presumption of innocence and all the rights accorded him in the process of his adjudication. In so doing, he waives a panoply of constitutional rights, many of which he may be unaware of and all of which the trial court must ensure he understands. In contrast, when a defendant

gives up his right to appeal, the presumption of innocence no longer applies as he has already been adjudicated guilty. He is simply ending further review of his case, a concept that is not difficult to understand. *Cf. United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1180–81 (7th Cir.1983) (defendant knowingly waived right to jury trial in favor of bench trial even though he may not have known specifics of how right operated because basic choice is easily understood), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984).

Bruner's affidavit stated that he wanted to withdraw his appeal, that he was doing so knowingly and voluntarily and without any coercion, that he had consulted with his counsel with respect to the withdrawal, and that he understood that "once this appeal is withdrawn, it cannot be reinstated." We conclude that this affidavit, combined with his counsel's stipulated motion to dismiss, contained sufficient information to satisfy Bruner's due process rights in having his motion to withdraw granted.

▮ Bruner next contends that his direct appeal should not have been dismissed without an order signed by at least one member of this court, as opposed to the clerk of the court. He asserts, "Allowing the Clerk of the Court to dismiss a criminal defendant's direct appeal circumvents the important requirement of judicial imprimatur." He again attempts to draw parallels to the acceptance of guilty pleas where the law places on the trial judge the burden of establishing compliance with rule 11(e) of the Utah Rules of Criminal Procedure. *Gibbons*, 740 P.2d at 1313.

We have already determined that the withdrawal of a direct appeal involves significantly fewer due process protections than does the entering of a guilty plea. Furthermore, Bruner does not cite any authority supporting the proposition that the granting of a stipulated withdrawal of a direct appeal cannot be delegated to the clerk of the court.

---

4. Even if the State had been required to shoulder the burden of proof to demonstrate Bruner's knowing and voluntary waiver, Bruner's own affidavit requesting the withdrawal would likely meet that burden.

■ The manner in which Bruner's direct appeal was dismissed complied with the requirements of Utah Rule of Appellate Procedure 37(b), entitled "Voluntary dismissal." This rule provides:

> If the parties to an appeal or other proceeding shall sign and file with the clerk an agreement that the proceeding be dismissed, specifying the terms as to payment of costs and shall pay whatever fees are due, *the clerk shall enter an order of dismissal,* unless otherwise directed by the court. An appeal may be dismissed on motion of the appellant upon such terms as may be agreed upon by the parties or affixed by the court.

(Emphasis added.) This rule does not even require the withdrawing party to submit an accompanying affidavit. Where, as here, an affidavit by the defendant accompanies the stipulation to withdraw the direct appeal, due process does not require this court to make an independent investigation to verify the understanding of the withdrawing party. *See also* Utah R.App.P. 23(d) (permitting the court to review procedural orders disposed of by the clerk "upon motion of a party or upon its own motion").

### B. Ineffective Assistance of Appellate Counsel

■ Bruner contends that the district court erred in dismissing his claim of ineffective assistance of appellate counsel. The Due Process Clause of the Fourteenth Amendment guarantees the right to effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). The standard for judging ineffective assistance of appellate counsel is the same as the standard for judging ineffective assistance of trial counsel. *Butterfield v. Cook,* 817 P.2d 333, 336 (Ct. App.), *cert. denied,* 826 P.2d 651 (Utah 1991); *see also Tillman v. Cook,* 855 P.2d 211, 221 (Utah 1993), *cert. denied,* 510 U.S. 1050, 114 S.Ct. 706, 126 L.Ed.2d 671 (1994); *State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991). Under that standard, a defendant must show that his counsel's representation fell below an objective standard of reasonable conduct and that the deficient performance prejudiced the defendant. *Tillman,* 855 P.2d at 221 (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

Bruner contends that the evidence was insufficient to support the district court's conclusion that Palacios adequately disclosed to him the consequences of withdrawing his direct appeal. The court made the following findings of fact:

> On more than one occasion (including one personal visit at the prison), Ms. Palacios discussed with petitioner the consequences of withdrawing his direct appeal. Ms. Palacios told petitioner that by withdrawing his direct appeal, he was waiving his right to challenge his conviction.
>
> Ms. Palacios informed petitioner that although she did not see any claims of reversible error to raise on direct appeal, there were several claims that she would assert in an appellate brief, if petitioner desired.
>
> Petitioner had an adequate opportunity to consult with Ms. Palacios prior to withdrawing his direct appeal.
>
> Despite Ms. Palacios' advice, petitioner elected to withdraw his appeal.
>
> Petitioner fully understood that by withdrawing his appeal, he was waiving his right to challenge his conviction.

We will not set aside these findings unless we find them to be clearly erroneous. *Fernandez v. Cook,* 870 P.2d 870, 874 (Utah 1993).

The findings closely track Palacios' testimony at the hearing. She testified that Bruner initiated the withdrawal of the appeal and that "he no longer had any interest in his case.... He didn't want to do it anymore." She testified that she spoke with Bruner both by telephone and in person prior to sending the written waiver to the prison for his signature. She said that Bruner called her on the date he received the affidavit and would not sign it until he spoke with her.

She testified that she discussed his right to appeal with him and the ramifications of withdrawing the appeal. She told him that once he withdrew his appeal, "it was all over.... I told him that it would be very final if he withdrew his appeal because he

wouldn't have another chance again." She candidly explained to him that his chances on appeal might not be very good, "but any hope, any other chance would be gone once he [withdrew the appeal]."

Palacios believed that Bruner was "a very bright man," that he understood the finality of withdrawing the appeal, and that he was not susceptible to being pressured into withdrawing an appeal. She said that "if anything I encouraged him to proceed with [the appeal]" because "as a defense attorney you never give up hope." She further stated that she "never would have advised a client" to withdraw an appeal.

 Although Bruner told a very different story,[5] we cannot hold that the district court's findings of fact are against the clear weight of evidence. *See State v. Walker*, 743 P.2d 191, 193 (Utah 1987). Bruner and Palacios simply told two differing versions of pivotal events. There was no evidence to corroborate either side's testimony.[6] The district court found Palacios more credible: "Ms. Palacios has indicated she has spoken with petitioner several times on the telephone, that she went to the prison, and I don't have any reason to doubt that communication occurred." Trial courts are accorded great discretion in determining factual matters. They are in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole. *State v. Goodman*, 763 P.2d 786, 787 (Utah 1988). When, as here, contradictory testimony is offered by two key witnesses, "the fact finder is free to weigh the conflicting evidence presented and to draw its own conclusions." *State v. Pierce*, 722 P.2d 780, 782 (Utah 1986).

On the basis of the record testimony, we affirm the district court's conclusion that Bruner failed to demonstrate any deficient performance on the part of Palacios. Because Bruner does not successfully demonstrate that his counsel's performance fell below an objective standard of reasonableness, we do not reach the second prong of the *Strickland* ineffectiveness test. *See Fernandez*, 870 P.2d at 877.

### C. Denial of Appointed Counsel

 Bruner moved the district court to appoint counsel to represent him in the proceedings below. The court denied the motion, and Bruner represented himself throughout the proceedings. He asserts that given the importance of the issues involved and the nature of the proceedings, the district court should have appointed counsel for him. This court has previously held that "neither the Due Process Clause nor the equal protection guarantee of meaningful access requires a state to provide counsel for indigent defendants seeking post-conviction relief." *Parsons v. Barnes*, 871 P.2d 516, 530 (Utah 1994), *cert. denied*, — U.S. —, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994).[7] Bruner has not cited to any Utah statutory or case authority requiring the district court to appoint counsel for a post-conviction writ proceeding. *Cf.* Utah Code Ann. §§ 77–32–1(5), (6), –3(1)(b) (appointed counsel for indigent defendants required in first appeal of right

---

**5.** Bruner admitted calling LDA and leaving a message with a secretary that he "was thinking about withdrawing the appeal." He testified that he was considering withdrawing because, among other things, he had heard from other inmates that if he was successful on appeal, he could receive the death penalty in a second trial. He testified that on the basis of the phone message alone, LDA prepared the affidavit authorizing withdrawal of the appeal and sent it to the prison for his signature. He testified that at the prison, he was rushed by a prison guard to sign the document and that he did not read or understand its contents. He testified that he never talked to Palacios about withdrawing the appeal, either in person or on the telephone, and that he did not understand that he was relinquishing his right to appeal.

**6.** Palacios was unable to produce any notes memorializing her discussions with Bruner regarding the withdrawal of his appeal. The prison's visitor logs could have confirmed a meeting between Palacios and Bruner during the days leading up to the signing of the affidavit, but the logs are kept for only three years. Bruner sought to obtain copies of the logs of the dates in question but was informed that they had been destroyed.

**7.** *Parsons* examined only the federal constitutional arguments. We expressly declined to consider whether appointment of counsel under these circumstances may be required under the Utah Constitution. *Parsons*, 871 P.2d at 530. This issue has not been argued or briefed in this case, and we therefore do not address it.

but not "other and subsequent discretionary appeals or discretionary writ proceedings"). Because the district court had no affirmative duty to appoint counsel or to ensure that Bruner was represented, we cannot hold that it acted improperly in denying Bruner's motion.

We affirm the district court's denial of Bruner's petition for extraordinary relief.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in the opinion of HOWE.