2004 UT App 87

**Carolyn Roberts MANNING, Petitioner and Appellant,**

v.

**STATE of Utah, Respondent and Appellee.**

**No. 20020993–CA.**

Court of Appeals of Utah.

April 1, 2004.

Joan C. Watt, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General and Laura B. Dupaix, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

ORME, Judge:

¶ 1 Carolyn Manning appeals the trial court's denial of her petition for postconviction relief, which was brought over a year after she entered her guilty pleas. She contends that because she was not fully informed by her counsel and the trial court of the nature of her right to appeal, the trial court's refusal to resentence her constitutes a denial of her constitutional right to appeal. We affirm the trial court's denial of her motion and clarify the procedures for attacking guilty pleas and the availability of resentencing as a means to cure a missed opportunity to appeal.

## BACKGROUND

¶ 2 Manning was originally charged with three counts of unlawful dealing with property by a fiduciary, one count of failure to render a proper tax return, and two counts of theft by deception. Under the terms of a plea agreement, Manning pled guilty to one count of unlawful dealing with property by a fiduciary, a second degree felony; one count of failing to file a proper tax return, a third degree felony; and one count of theft, a third degree felony. The agreement also called for Manning to pay restitution to her victims. In exchange, the State agreed to dismiss the other counts.

¶ 3 In her written plea statement and at the plea hearing, Manning acknowledged that by entering a guilty plea she was waiving certain rights, including her right to appeal the conviction. In July 2001, she signed a statement, which she had reviewed with counsel, confirming that she intended to enter a guilty plea. The statement explained each of her rights that would be waived by voluntarily entering a guilty plea, including that the "right of appeal is limited." In

contrast, if she "were tried and convicted by a jury or by a judge, [she] would have the right to appeal [her] conviction and sentence." The statement further explained that by pleading guilty she was "not preserving any issue for appeal relative to the Court's rulings on pre-trial motions or based upon statutory or constitutional challenges" and that she understood that by pleading guilty she waived her "rights to file an appeal." The statement also provided notice of the "time limits for withdrawing pleas" and indicated that such a request "must be made by motion within 30 days after the entry of the plea"[1] and that the plea may be withdrawn only "upon a showing of good cause and with leave of the Court."

¶ 4 At the plea hearing in July 2001, Manning was represented by counsel, and the trial court engaged her in a colloquy before accepting her plea. During the course of the colloquy, the court determined that Manning understood the proceedings against her and was competent to enter a guilty plea. Her attorney stated that she is "a bright lady" who was "educated through the 15th grade" and that she had "participated in the preparation of" the written plea statement. Manning stated that her attorney had "taken the time to extend himself to adequately and properly serve me, and I'm satisfied with his service." The court explained that the "third degree felonies may carry with them an indeterminate term at the Utah State Prison of zero to five years"; "[t]he second degree felony can carry with it an indeterminate term at the Utah State Prison of one to fifteen years"; and "there is a substantial amount of restitution that will be ordered." The court reviewed with Manning the trial rights she would forego by pleading guilty and stated that her "right to appeal these pleas of guilty is very limited." After accepting her guilty pleas, the court informed her of her right to file a motion to withdraw the pleas within 30 days.

¶ 5 On September 27, 2001, Manning was sentenced to the statutory term of imprisonment for each offense, which prison terms were suspended except for one year, and she was given credit for time already served, which was approximately four months. She was placed on probation for thirty-six months and was ordered to pay restitution in the tentative amount of $210,000 to her individual victims and $19,431.24 to the Utah State Tax Commission. At sentencing, defense counsel indicated that he had "spoken to Ms. Manning about the real probability that [incarceration] was going to happen."

¶ 6 On November 23, 2001, Manning filed a pro se notice of appeal, which this court later dismissed for lack of jurisdiction. In an unpublished decision, this court explained that when a notice of appeal is filed beyond the 30–day appeal deadline, see Utah R.App. P. 4(a), we lack appellate jurisdiction, and Manning's only remedy if she was deprived of the right to appeal was to seek postconviction relief under the Utah Rules of Civil Procedure.

¶ 7 On July 31, 2002, Manning filed a petition in the district court "pursuant to Rule 65B(b) and/or 65C [of the] Utah Rules of Civil Procedure for an extraordinary writ allowing her to be sentenced nunc pro tunc . . . thereby extending the time in which to file a notice of appeal." Her primary claim was that her right to appeal and right to counsel had "been violated by the failure to file a timely notice of appeal from her conviction." The district court denied her petition for postconviction relief, finding that Manning "was informed by the court of her limited right to appeal," "was represented by very competent counsel," and had "not established that she was unconstitutionally denied her right to appeal." Manning now appeals that ruling.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Manning argues that the trial court "erred in refusing to resentence her nunc pro tunc." She contends that she "was deprived of her constitutional right to appeal" and "was also deprived of the right to

---

1. This statement was made just weeks before issuance of the Utah Supreme Court's opinion in State v. Ostler, 2001 UT 68, 31 P.3d 528, which held "that the thirty-day limitation on the filing of a motion to withdraw a plea of guilty or no contest runs from the date of final disposition of the case at the district court," id. at ¶ 11, rather than from the time of entry of the plea.

counsel during the period for perfecting an appeal." "Generally, an appeal from a judgment on a petition for post-conviction relief raises questions of law reviewed for correctness, [on which we give] no deference to the post-conviction court's conclusion." *Wickham v. Galetka*, 2002 UT 72, ¶ 7, 61 P.3d 978. *Accord Moench v. State*, 2002 UT App 333, ¶ 4, 57 P.3d 1116. Likewise, interpretation of the Post–Conviction Remedies Act, rule 65C, and rule 65B "present[ ] question[s] of law, which we also review for correctness and without deference to the lower court's conclusion." *Moench*, 2002 UT App 333 at ¶ 5, 57 P.3d 1116. *See Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997) (stating that "matters of statutory construction are questions of law that are reviewed for correctness").

## ANALYSIS

¶ 9 The Utah Constitution provides that "[i]n criminal prosecutions the accused shall have the right to ... appeal in all cases." Utah Const. art. I, § 12. The Utah Supreme Court has stated that "the right of appeal [is] essential to a fair criminal proceeding" and it cannot be "lightly forfeited." *State v. Tuttle*, 713 P.2d 703, 704 (Utah 1985). However, appeals must be filed "within 30 days after the date of entry of the judgment or order appealed from." Utah R.App. P. 4(a). It is well established that "[i]f an appeal is not timely filed, this court lacks jurisdiction to hear the appeal." *Serrato v. Utah Transit Auth.*, 2000 UT App 299, ¶ 7, 13 P.3d 616, *cert. denied*, 21 P.3d 218 (Utah 2001). The Utah Supreme Court has warned that extraordinary writs "must not" be used to "make a mockery of the time limits for appeal, undermine the finality of criminal judgments, and promote the indefensible merry-go-round of collateral attack." *Boggess v. Morris*, 635 P.2d 39, 43 (Utah 1981). Nonetheless, in circumstances where the right to appeal has been *denied*, the trial court may resentence a criminal defendant nunc pro tunc to provide the defendant with an opportunity to file a timely appeal. *See id.* (granting extraordinary relief where petitioner requested that counsel pursue an appeal but counsel failed to file a notice of appeal); *State v. Johnson*, 635 P.2d 36, 38 (Utah 1981).[2] Manning contends it was error for the lower court to refuse to resentence her.

### I. Resentencing

¶ 10 Utah cases have recognized that in certain limited circumstances a defendant should be resentenced in order to revive the right to appeal. In *State v. Johnson*, 635 P.2d 36 (Utah 1981), the criminal defendant claimed that his attorney agreed to file a notice of appeal after sentencing, but the attorney failed to follow through. *See id.* at 37. Having learned of the first attorney's failure, the defendant contacted a second attorney while still within the 30–day period for filing an appeal, "but through some misunderstanding" a timely appeal was not filed. *Id.* The Court denied the defendant's request to extend the time for filing because "[t]he 30–day period ... is jurisdictional and cannot be enlarged" but explained that due to the "important interests involved," which made "further proceedings desirable," the trial court could take evidence to determine whether the defendant's constitutional right to appeal the conviction had been denied. *Id.* The Court stated that "[i]f the facts alleged by the defendant are true ... defendant was denied a constitutional right and must be provided an opportunity to take a direct appeal from his conviction." *Id.* at 38. As the remedy for such a denial, the Court adopted the resentencing procedure described in *People v. Callaway*, 24 N.Y.2d 127, 299 N.Y.S.2d 154, 247 N.E.2d 128, 130 (N.Y. 1969), whereby the act of resentencing starts a new 30–day period for filing an appeal. *See Johnson*, 635 P.2d at 38.

¶ 11 Similarly, in *Boggess v. Morris*, 635 P.2d 39 (Utah 1981), the defendant filed a notice of appeal almost seven months after

---

2. As aptly stated in *State v. Johnson*, 635 P.2d 36 (Utah 1981), "[n]unc pro tunc, which means 'now for then,' is probably a misnomer for this circumstance, where the court is resentencing to give the judgment of conviction not retroactive but present effect." *Id.* at 38 n. 1. Although *Johnson* suggests changing the terminology to "tunc pro nunc," *id.*, perhaps it is less confusing to forego the quest for the perfect Latin phrase and simply describe the requested action as "resentencing."

he was sentenced, claiming, among other things, ineffective assistance of counsel. *See id.* at 40. "After his conviction and again at the time of his sentencing, defendant advised his appointed counsel that he did not want to appeal[, but a]fter he arrived at the state prison, defendant changed his mind" and so advised his attorney. *Id.* The Court determined that "[c]ounsel erred in not filing the notice of appeal" because the defendant's letter asking his attorney to file an appeal reached the attorney the day before the expiration of the time for filing a notice of appeal. *Id.* The Court stated that "[t]he error in this case goes to the availability of the appeal" and "[i]f the facts found by the [trial] court establish that the right to appeal was denied, that court is then empowered to resentence the defendant nunc pro tunc." *Id.* at 42–43.

## II.   Procedural Confusion

¶ 12 There is widespread confusion about the exact procedure to be followed in cases like the instant one, where resentencing to resurrect the right to appeal is the objective, as typified by Manning's invocation of "Rule 65B(b) and/or 65C [of the] Utah Rules of Civil Procedure." Given the recurring nature of this problem, we take the opportunity to illuminate the historical reasons for this confusion and to clarify the correct procedural approach.

¶ 13 At the time that *Johnson* and *Boggess* were decided, "[t]he appropriate remedy [was] a motion for relief under Utah Rules of Civil Procedure, Rule 65B(i)," which authorized the trial court, "if it [found] in favor of the complainant, to 'enter an appropriate order with respect to the judgment or sentence in the former proceedings ... as the court may deem just and proper in the case.'" *Johnson,* 635 P.2d at 38 (third alteration in original) (quoting Utah R. Civ. P. 65B(i)(8) (1977)).[3]   The Utah Supreme Court explained that "[t]he postconviction hearing procedure is a successor to the common-law writ of error coram nobis." *Id.* A writ of error coram nobis is "[a] writ of error directed to a court for review of its own judgment and predicated on alleged errors of fact."

Black's Law Dictionary 338 (7th ed.1999). It can be distinguished from the more familiar writ of habeas corpus, which is "employed to bring a person before a court, most frequently to ensure that the party's imprisonment or detention is not illegal." *Id.* at 715.

> [Coram nobis], which [the Utah Supreme Court] declared to be available in Utah in appropriate cases, *Neal v. Beckstead,* 3 Utah 2d 403, 285 P.2d 129 (1955), was used by a sentencing court to modify or vacate a judgment of conviction on the basis of facts which, without defendant's fault, did not appear on the face of the record and as to which defendant was without other remedy. *State v. Gee,* 30 Utah 2d 148, 514 P.2d 809 (1973); *Sullivan v. Turner,* 22 Utah 2d 85, 448 P.2d 907 (1968). Thus, coram nobis could be used, in carefully limited circumstances, to modify or vacate a judgment where extra-record facts showed that the defendant had been deprived of his constitutional right to a fair trial, including the right to the assistance of counsel.

*Johnson,* 635 P.2d at 38.

¶ 14 Again, when *Johnson* and *Boggess* were decided in 1981, rule 65B(i) governed postconviction relief in Utah. *See* Utah R. Civ. P. 65B(i) (1977) (stating that "[a]ny person imprisoned ... under a commitment of any court ... who asserts that in any proceedings which resulted in his commitment there was a substantial denial of his [constitutional] rights ... may institute a proceeding under this Rule"). Rule 65B was reorganized and revised in 1991, *see* Utah R. Civ. P. 65B (1992) advisory committee note, so that postconviction relief was thereafter governed by rule 65B(b). *See* Utah R. Civ. P. 65B(b) (1992) (stating that "[a]ny person committed by a court to imprisonment ... who asserts that the commitment resulted from a substantial denial of rights may petition the court for relief under this paragraph"); Utah R. Civ. P. 65B (1992) advisory committee note (stating that "[p]aragraph (b) ... replaces subparagraph (i) of the former rule").

---

3.   For clarity, we include the dates certain rules were adopted as we discuss the evolution of postconviction relief as dealt with in the Utah Rules of Civil Procedure.

### III. The Post–Conviction Remedies Act and Rule 65C

¶ 15 In 1996, as a result of coordinated efforts by all three branches of state government, the Legislature enacted the Post Conviction Remedies Act (the PCRA) and the Utah Supreme Court promulgated rule 65C. *See* Utah Code Ann. §§ 78–35a–101 to –304 (2002); Utah R. Civ. P. 65C (Supp.1996 & 2003). Both became effective on July 1, 1996. The PCRA "establishes a substantive legal remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies, including a direct appeal." Utah Code Ann. § 78–35a–102(1) (2002). Under the PCRA,

> a person who has been convicted and sentenced for a criminal offense may file an action in the district court of original jurisdiction for post-conviction relief to vacate or modify the conviction or sentence upon the following grounds:
>
> (a) the conviction was obtained or the sentence was imposed in violation of the United States Constitution or Utah Constitution;
>
> (b) the conviction was obtained under a statute that is in violation of the United States Constitution or Utah Constitution, or the conduct for which the petitioner was prosecuted is constitutionally protected;
>
> (c) the sentence was imposed in an unlawful manner, or probation was revoked in an unlawful manner;
>
> (d) the petitioner had ineffective assistance of counsel in violation of the United States Constitution or Utah Constitution; or
>
> (e) newly discovered material evidence exists that requires the court to vacate the conviction or sentence. . . .

Utah Code Ann. § 78–35a–104(1)(a)–(e) (2002).

¶ 16 Sections 106 and 107 of the PCRA preclude relief in certain circumstances. "A person is not eligible for relief . . . upon any ground that," among other things, "could have been but was not raised at trial or on appeal," *id.* § 78–35a–106(1)(c), unless "the failure to raise that ground was due to ineffective assistance of counsel." *Id.* § 78–35a–106(2). Also, "[a] petitioner is entitled to relief only if the petition is filed within one year after the cause of action has accrued," *id.* § 78–35a–107(1), although "a court may excuse a petitioner's failure to file within the time limitations" if it finds that "the interests of justice [so] require."[4] *Id.* § 78–35a–107(3).

¶ 17 The PCRA also states that "[p]rocedural provisions for filing and commencement of a petition are found in Rule 65C [of the] Utah Rules of Civil Procedure." Utah Code Ann. § 78–35a–102(1) (2002). Rule 65C, entitled "Post-conviction relief," "replace[d] former paragraph (b) of Rule 65B," Utah R. Civ. P. 65C (1997) advisory committee note, and now "govern[s] proceedings in all petitions for post-conviction relief filed under [the PCRA]." Utah R. Civ. P. 65C(a) (2003). *See also* Utah R. Civ. P. 65B (1997) advisory committee note (stating that "[t]he 1996 amendment deleted former Subdivision (b) . . . the provisions of which have been transferred to Rule 65C"); *Jacobs v. State*, 2001 UT 17, ¶ 1 n. 1, 20 P.3d 382 (noting that "rule 65B(b) was renumbered and is currently designated as rule 65C").

### IV. Distinguishing Rule 65B

■ ¶ 18 The basis upon which "a person may petition the court for extraordinary relief" under rule 65B now only includes

---

4. The "interests of justice" escape valve alleviates the concern we expressed in *Currier v. Holden*, 862 P.2d 1357 (Utah Ct.App.), *cert. denied*, 870 P.2d 957 (Utah 1994). In *Currier*, we struck down the former statute of limitations governing postconviction relief because it was "a rigid three-month limitation" that did not "include a provision excusing delay on the grounds of good cause." *Id.* at 1368 & n. 18. At least partly in response to our decision in *Currier*, the Legislature enacted the current provision, lengthening the time period to one year and adding the "interests of justice" exception, *see Julian v. State*, 966 P.2d 249, 251 n. 3 (Utah 1998), which, as we have previously held and affirm today, " 'must *always* [be] consider[ed] . . . when a petitioner raises meritorious claims.' " *Swart v. State*, 1999 UT App 96, ¶ 4, 976 P.2d 100 (quoting *Frausto v. State*, 966 P.2d 849, 851 (Utah 1998)(plurality opinion)) (emphasis in original).

any of the grounds set forth in paragraph (b) (involving wrongful restraint on personal liberty), paragraph (c) (involving the wrongful use of public or corporate authority), or paragraph (d) (involving the wrongful use of judicial authority, the failure to exercise such authority, and actions by the Board of Pardons and Parole).

Utah R. Civ. P. 65B(a) (2003). The use of rule 65B is limited to cases "[w]here no other plain, speedy and adequate remedy is available," and the scope of relief under paragraph (b) for "[w]rongful restraints on personal liberty," Utah R. Civ. P. 65B(a)-(b), is now narrowed to "proceedings involving wrongful restraint on personal liberty *other than those* governed by Rule 65C." Utah R. Civ. P. 65B (2003) advisory committee note (emphasis added). Therefore, because rule 65C governs proceedings filed under the PCRA, which is the governing statute for "any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies," Utah Code Ann. § 78–35a–102(1), rule 65B is not applicable in a challenge focused on a criminal conviction, even if a restriction on liberty results from the conviction.

¶ 19 In addition, there is a very important procedural distinction between the two provisions: Petitioners alleging "[w]rongful restraint on personal liberty" under rule 65B(b) must "fil[e] a petition with the clerk of the court in the district in which [they are] restrained," Utah R. Civ. P. 65B(b)(2) (2003), while petitions for postconviction relief must be filed in "the district court in the county in which the judgment of conviction was entered." Utah R. Civ. P. 65C(b) (2003).

¶ 20 Thus, the plain language of our rules of civil procedure demonstrates the distinction between a petition for postconviction relief, which is governed by rule 65C, and a petition for wrongful restraint on personal liberty, which is governed by rule 65B(b), *see Dipoma v. McPhie,* 2001 UT 61, ¶ 11, 29 P.3d 1225 (stating that courts should "look[ ] to the plain language of the applicable rule when construing it"), and we conclude that a petitioner seeking to challenge the validity of her conviction(s) may not circumvent the requirements of the PCRA by styling her petition as one filed under rule 65B(b).[5] Rather,

---

5. In so holding, we acknowledge that, prior to the enactment of the PCRA and rule 65C, the Utah Supreme Court stated in dicta that " 'postconviction proceedings' [are] a branch of habeas corpus" and that the two form a "single constitutional remedy." *Hurst v. Cook,* 777 P.2d 1029, 1033–34 (Utah 1989). In *Renn v. Utah State Bd. of Pardons,* 904 P.2d 677 (Utah 1995), the Court explained:

> In its early history, a writ of habeas corpus was classically used to challenge the lawfulness of a physical restraint under which a person was held or the jurisdiction and sentence of a court that convicted a person.... Later, the scope of the writ was expanded to provide a post-conviction remedy in unusual circumstances to determine whether a person was convicted in violation of principles of fundamental fairness or whether the sentence imposed is void.... In addition, a writ of habeas corpus may be used to challenge cruel or oppressive conditions of imprisonment.

*Id.* at 681–82 (footnote omitted). *See also Petersen v. Utah Bd. of Pardons,* 907 P.2d 1148, 1153 & n. 2 (Utah 1995) ("A challenge to the authority of a governmental agency or officer to restrain a person's liberty is classically raised by a petition for a writ of habeas corpus.... It can also be used to challenge, for example, the terms and conditions of confinement[,] or, in certain cases, to challenge the authority of a private person to restrain the liberty of another."); *Dunn v. Cook,* 791 P.2d 873, 875 (Utah 1990) ("The function of a writ of habeas corpus as a post-conviction remedy is to provide a means for collaterally attacking convictions when they are so constitutionally flawed that they result in fundamental unfairness and to provide for collateral attack of sentences not authorized by law.").

Our decision today is not fundamentally inconsistent with Utah's pre-PCRA jurisprudence. Though postconviction relief may have its roots in the ancient writ of habeas corpus, it does not follow that the two may be used interchangeably, especially given the subsequent enactment of the PCRA. *See Spain v. Stewart,* 639 P.2d 166, 168 & n. 2 (Utah 1981) (notifying that petitioner, who was charged but not convicted for possession of a controlled substance and was being held in county jail, properly challenged the legality of his restraint via rule 65B(f) (now rule 65B(b)), which is "the traditional habeas corpus [procedure for] assuring that a person is not 'unjustly imprisoned or otherwise restrained of his liberty' "; thus, the "postconviction hearing provision [of rule] 65B(i)" (now rule 65C) did not apply); *Lucero v. Warden,* 841 P.2d 1230, 1231 (Utah Ct.App.1992) (noting difference between rule 65B(b) (now rule 65C) and rule 65B(c) (now rule 65B(b)), and stating, "[b]ecause petitioner challenges the terms and conditions of his confinement, subparagraph (c) clearly applies"). *Cf. Monson v. State,* 953 P.2d 73, 73–74 (Utah 1998) (stating that

such petitioners must proceed under the PCRA and rule 65C. *See Julian v. State,* 2002 UT 61, ¶ 4, 52 P.3d 1168 (recognizing that "[t]he PCRA replaced prior post-conviction remedies with a statutory, 'substantive legal remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies' ") (quoting Utah Code Ann. § 78–35a–102). A contrary holding would render rule 65C and the PCRA superfluous, and "we seek 'to render all parts [of the statute] relevant and meaningful,' and we 'avoid interpretations that will render portions of a statute superfluous or inoperative.' " *State v. Tooele County,* 2002 UT 8, ¶ 10, 44 P.3d 680 (citations omitted).

¶ 21 Typifying—or at least recognizing—the confusion we seek to ameliorate in this opinion, Manning sought relief in the trial court "pursuant to Rule 65B(b) and/or 65C." Manning relies on *State v. Rees,* 2003 UT App 4, 63 P.3d 120, *cert. granted,* 73 P.3d 946 (Utah 2003), in support of her argument that "a defendant who is requesting resentencing because his right to appeal was violated can file a petition for extraordinary relief under rule 65B(b)." *Rees* was accurate insofar as it suggested that "coram nobis type relief" is still available, *id.* at ¶ 5 n. 2; however, it was clearly incorrect in stating that "[former] Rule 65B(i) [is] presently embodied in rule 65B(b)" and that "rule 65B(b) [is] the successor to the writ of error coram nobis." *Id.* at ¶¶ 6, 16. Having clarified that rule 65B(b) is really the successor rule to the writ of habeas corpus while rule 65C is the successor to the writ of error coram nobis,[6] we now return to the specific arguments made by Manning.

postconviction claims of defective plea colloquy and ineffective assistance of counsel are governed by rule 65B(b) (now rule 65C)); *Padilla v. State Bd. of Pardons & Parole,* 947 P.2d 664, 667 (Utah 1997) (stating that "Rule 65B(c) [governing wrongful restraint on personal liberty] cannot be used to challenge Board [of Pardons] actions that might be challenged under Rule 65B(e) [governing wrongful use of judicial authority]") (citation omitted); *Earle v. Warden,* 811 P.2d 180, 181 (Utah 1991) (concluding that postconviction petition alleging that trial court committed reversible error in "refusing to allow [petitioner] to withdraw his guilty plea" is governed by rule 65B(i) (now rule 65C)); *Andrews v. Shulsen,* 773 P.2d 832, 833 (Utah 1988) (petition challenging conviction based on erroneous jury instruction was "governed by Utah Rule of Civil Procedure 65B(i)" (now 65C)); *Lancaster v. Cook,* 753 P.2d 505, 506 (Utah 1988) (postconviction claims "challeng[ing] the validity of [petitioner's] guilty plea" are governed by rule 65B(i) (now rule 65C)); *Andrews v. Morris,* 677 P.2d 81, 85 (Utah 1983) (postconviction claims alleging "denial of due process and equal protection" are properly "review[ed] under [r]ule 65B(i)" (now rule 65C)); *Andrews v. Morris,* 607 P.2d 816, 818, 821 (Utah) (petitioner's postconviction claims that he was, inter alia, "deprived . . . of a trial by a fair and impartial jury" were governed by rule 65B(i) (now rule 65C)), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980).

Other jurisdictions, recognizing the difference between postconviction relief focused on a conviction and extraordinary relief based on wrongful restraint of personal liberty, i.e., the traditional writ of habeas corpus, have likewise held that postconviction relief is the proper avenue for challenging a conviction. *See, e.g., Jacobs v. Carmel,* 869 P.2d 207, 209–10 (Colo.1994) (en banc) (holding that petitioner's claims—alleging ineffective assistance of counsel and challenging

his plea—are properly resolved via "postconviction motion" and relief "may not be obtained by writ of habeas corpus"); *Abbott v. State,* 129 Idaho 381, 924 P.2d 1225, 1228 & n. 1 (Idaho Ct.App.1996) (stating that "once the time for a direct appeal has expired, the exclusive vehicle to present a claim that a conviction or sentence was entered in violation of constitutional or statutory law is an application for post-conviction relief under the [Idaho Uniform Post–Conviction Procedure Act]," although "[o]ther types of challenges to an inmate's incarceration . . . including challenges to the conditions of confinement, may continue to be asserted in a petition for a writ of habeas corpus"); *People ex rel. Walker v. Twomey,* 9 Ill.App.3d 544, 291 N.E.2d 833, 835 (1973) (holding that "[a] claim of denial of the constitutional right to counsel cannot be determined on a writ of habeas corpus"; rather, such claim is properly resolved via "post-conviction petition"); *Bates v. Czerniak,* 187 Or.App. 8, 66 P.3d 519, 520 (2003) (affirming dismissal of habeas corpus petition challenging guilty plea and noting that "[a] petition for post conviction relief is the exclusive means for challenging the lawfulness of a criminal conviction and the proceedings on which it was based[; a]n individual may not avail himself of habeas corpus relief for this purpose"), *review denied,* 69 P.3d 1232 (Or.2003).

6. *See State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994) (stating that "[h]orizontal stare decisis does not . . . require that a panel adhere to its own or another panel's prior decision with the same inflexibility as does vertical stare decisis[; i]nstead, although it may not do so lightly, a panel may overrule its own or another panel's decision where 'the decision is clearly erroneous' ") (citation omitted), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995). Given the Utah Supreme Court's pending consid-

## V.  Analysis of Manning's Claims

¶ 22 Manning contends that she "did not knowingly and voluntarily waive her right to appeal"; "she was given confusing information as to any right of appeal she might have after pleading guilty"; she "was also not told that she was required to file a notice of appeal within thirty days of sentencing"; and the fact that she "filed a notice from jail within . . . fifty-seven days after sentencing" demonstrates that she "did not waive the right to appeal." She additionally claims that she "was not clearly and adequately advised of the nature of her right to appeal" and she was "deprived of her right to counsel during the period for perfecting the appeal." However, she has made no substantive argument as to how she was prejudiced by missing the opportunity to appeal or what grounds for appeal existed.[7]

### A.  Denial of the Right to Appeal

¶ 23 Acknowledging that both *Boggess* and *Johnson* speak in terms of the right to an appeal being "denied," *see Boggess v. Morris*, 635 P.2d 39, 39 (Utah 1981); *State v. Johnson*, 635 P.2d 36, 38 (Utah 1981), Manning nonetheless argues that "the appropriate inquiry in determining whether a defendant has been deprived of appeal rights and therefore should be resentenced is to determine whether the circumstances demonstrate a knowing and voluntary waiver of the right to appeal." In other words, Manning equates "denial" of appellate rights with mere waiver of appellate rights, unless it is shown—apparently by the State—that the waiver was knowing and voluntary. The State counters that more than passively letting appellate rights lapse is required by the concept of "denial." Indeed, in both *Boggess* and *Johnson* attorneys were or may have been instructed to file appeals but opted or allegedly opted not to do so. In other words, the defendants in those cases were denied or possibly denied their appellate rights due to the malfeasance of their attorneys.

¶ 24 To further crystallize the issue framed by the parties, this explanation may be helpful: Both sides agree that if a defendant who wishes to appeal is *denied* that right—by an attorney who fails to file a notice of appeal or, say, a prison official who refuses to mail to an attorney a defendant's instructions to file an appeal—the defendant should be resentenced to resurrect the right to appeal. Both sides agree that if a defendant knows of her right to appeal but voluntarily chooses to forego it, a change of heart after the 30–day period for filing an appeal does not entitle her to be resentenced. The disagreement is about what to do with cases in the gray area between those two rather clear situations. Manning contends that if it cannot be shown that the right to appeal was affirmatively waived, then it must be concluded that the defendant was denied that right and is entitled to be resentenced. The State contends that unless a defendant affirmatively sought to exercise the right to appeal, and it was denied as a result of the action or inaction of another person, the defendant is not entitled to the extraordinary remedy of resentencing.

¶ 25 Given the facts and holdings of *Johnson* and *Boggess*, we essentially agree with the State. The question of whether the right to appeal a conviction has been denied is a function of availability of that right. The question is answered by determining whether the State or defense counsel closes the

---

eration of this court's opinion in *State v. Rees*, 2003 UT App 4, 63 P.3d 120, *cert. granted*, 73 P.3d 946 (Utah 2003), we highlight the flaw in its analysis but *see* no need to do more.

We do note that it is of little practical consequence that *Rees* enunciated a four-part test, borrowed from the Ninth Circuit, "that a petitioner must satisfy before coram nobis type relief can be granted," *id.* at ¶ 14, since those factors substantially track the current requirements of the PCRA. *See* Utah Code Ann. §§ 78–35a–104, – 106 (2002).  Nevertheless, while the *Rees* factors may well serve as a useful guideline in determining whether a postconviction petition is meritori-

ous, the substantive and procedural provisions outlined in the PCRA control and should be the primary frame of reference in evaluating such petitions.

7.  Manning's position on appeal is circular, at best. She seeks to invalidate her guilty plea because she was not fully advised of her right to appeal, which she insists should now entitle her to the opportunity to appeal. If resentenced, her principal complaint on appeal—that she had been misinformed about her right to appeal when her guilty plea was taken—would necessarily be mooted.

door to the right of appeal, or whether the defendant simply chooses not to open it. In the context of this case, where Manning pled guilty, all that is required for her to choose not to exercise the right of appeal is knowledge that the right exists followed by her own inaction. The knowledge requirement was satisfied by the trial court's compliance with rule 11(e) of the Utah Rules of Criminal Procedure, which requires that the court find that "the defendant has been advised of the time limits for filing any motion to withdraw the plea" and "has been advised that the right of appeal is limited" before the court may accept a guilty plea. Utah R.Crim. P. 11(e)(7), (8). Once the defendant has been given sufficient information to allow the court to make such a finding, it is up to the defendant to exercise the right. In the present context, in order to conclude that a criminal defendant has been "denied" that right, the interference with a defendant's exercise of the right to appeal must originate in the criminal justice system. For instance, the mishandling of prison mail by a corrections officer or the ineffective assistance of defense counsel would be the basis for resentencing to restart appeal rights if such occurrences thwarted a defendant's intention to pursue an appeal. Conversely, a defendant could not demonstrate that the right to appeal was "denied" because he relied, to his detriment, on insights about appellate practice from his fellow prisoners or on guidance from a brother-in-law whose "expertise" is limited to regular watching of Court TV. Neither, as likely occurred in this case, does the late onset of "buyer's remorse" after several unpleasant weeks of incarceration equate to "denial" of the right to appeal.

¶ 26 Manning relies on several Utah cases to support her position that appellate rights that are not exercised are necessarily denied if they are not affirmatively waived. However, her reliance on these cases is misplaced. In *Bruner v. Carver*, 920 P.2d 1153 (Utah 1996), Bruner was sentenced to prison after he was found guilty of homicide and burglary. *See id.* at 1154. Although his attorneys

"filed a timely notice of appeal," Bruner indicated that "he 'was thinking about withdrawing the appeal.'" *Id.* His attorneys had an affidavit delivered to him in prison, which he signed, stating his desire to "knowingly and voluntarily ... withdraw [his] appeal." *Id.* The appeal was then dismissed and Bruner filed an action seeking to reinstate the appeal based on the deficient performance of his counsel. *See id.* at 1155. He argued, among other things, that "the withdrawal of his direct appeal was inconsistent with due process requirements because ... the district court required him to bear the burden of proving that the withdrawal of his direct appeal was not knowing and voluntary." *Id.* The Court determined that "because the prior judgment carries a presumption of validity, the trial court correctly assigned to Bruner the burden of showing a constitutional violation." *Id.* Bruner's "appeal was filed and was proceeding routinely until he personally requested that it be withdrawn." *Id.* at 1156. Therefore, there was no question as to whether the right to appeal had been denied; instead it was a question of whether he voluntarily chose to withdraw the appeal. Thus, *Bruner* was not within the gray area mentioned above because he voluntarily chose to forgo the right to appeal.

¶ 27 Conversely, in cases where another actor interferes with the defendant's attempt to file an appeal, it is logical to view the right as having been *denied*. *See, e.g., State v. Johnson*, 635 P.2d 36, 38 (Utah 1981) (stating that if "within the statutory period for appeal [defendant] requested counsel to take an appeal and counsel gave defendant reason to believe that he would but then failed to do so[, then] defendant was *denied* a constitutional right") (emphasis added). In this instance, Manning was not prevented from filing a timely appeal, she did not instruct her attorney to file a timely appeal, no timely appeal was filed, and we have no occasion to address whether any withdrawal of appeal was knowing and voluntary.[8]

---

8. Manning argues that the time for appeal could have been extended under rule 4(e) of the Utah Rules of Appellate Procedure. *See* Utah R.App. 4(e) (stating that "[t]he trial court, upon a show-

ing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the [30–day period] prescribed by

¶ 28 Manning's reliance on *State v. Tuttle*, 713 P.2d 703 (Utah 1985), is also unavailing. That case arose in a distinct context that offers no insight in to how to deal with "gray area" cases generally. In *Tuttle*, the defendant was convicted and sentenced, filed a notice of appeal, and then escaped from prison. *See id.* at 704. After Tuttle's escape, the Utah Supreme Court dismissed his appeal, stating that "one who escapes places himself beyond the reach of the judicial system," but upon his return to the State's custody the appeal was reinstated. *Id.* The Court rejected the State's argument that Tuttle "abandoned his appeal" by escaping and decided that the "more reasonable assumption [was] that the escapee ha[d] not even considered how his escape [would] affect his appeal rights." *Id.* The Court determined that "automatically denying reinstatement of an escapee's appeal upon a return to custody really amounts to imposition by this Court of a punishment for escape." *Id.* at 704–05. Thus, due to the "serious due process and equal protection questions" raised by refusing to reinstate an escapee's appeal, *id.* at 705, it could not be concluded that Tuttle voluntarily chose to forgo the right to appeal.

¶ 29 Manning argues that she "was not clearly and adequately advised of the nature of her right to appeal." The suggestion is that this incomplete advice—she does not contend she was affirmatively misled about her right to appeal—worked a denial of her right to appeal. However, the record does not support her claim. Her plea affidavit included the following sentence: "I understand that by pleading guilty/no contest I am waiving my rights to file an appeal." At the plea hearing, however, after explaining the rights associated with trial, the judge correctly stated: "Your right to appeal these pleas of guilty is very limited. You understand that to be the case?" Manning was additionally informed by the court at the plea hearing that she had 30 days to withdraw her guilty plea, which she never sought to do.[9]

¶ 30 It is well established that "a defendant [can] not simply appeal a conviction based on a guilty plea[, but] must first file a motion to withdraw [the] plea, giving the court who took the plea the first chance to consider defendant's arguments." *Summers v. Cook*, 759 P.2d 341, 342 (Utah Ct. App.1988). The "failure to do so extinguishes a defendant's right to challenge the validity of the guilty plea on appeal." *State v. Reyes*, 2002 UT 13, ¶ 3, 40 P.3d 630. Thus, even if we assume that Manning was given incomplete information regarding the nature of her right to appeal,[10] she was aware that

---

paragraph (a) of this rule"). However, this argument is without merit because Manning did not file a motion pursuant to rule 4(e) and there is no "showing of excusable neglect or good cause" that would have given the trial court discretion to extend the time for filing an appeal. *Id.*

9. Manning claims that the court erred in its failure to inform her, after the issuance of the Utah Supreme Court's decision in *State v. Ostler*, 2001 UT 68, 31 P.3d 528, that she had 30 days from sentencing in which to file a motion to withdraw her plea. *See* supra note 1. However, she concedes that this error does not affect this appeal because she never sought to withdraw her guilty plea.

10. As indicated above, *see* supra note 7, it is difficult to see where this argument, even if successful, leads Manning. The usual thrust of an argument raising a problem with a plea colloquy is that the plea was not knowingly and voluntarily entered due to the trial court's failure to comply with rule 11. *See* Utah R.Crim. P. 11. *See also In re Hill*, 621 P.2d 705, 706–07 (Utah 1980) (holding that unrepresented defendant was allowed to withdraw his guilty plea due to trial court's failure to explain the consequences of his plea); *State v. Tarnawiecki*, 2000 UT App 186, ¶¶ 16–18, 5 P.3d 1222 (holding that defendant was allowed to withdraw guilty plea due to trial court's failure to advise her of right to speedy trial before impartial jury). In other words, with reference to the cases cited, Tarnawiecki would likely not have pled guilty if she had known of her right to a speedy trial before an impartial jury, and Hill would not have pled guilty if he had known the consequences of pleading guilty to a felony. That logic does not apply to Manning, who knew her rights associated with trial and the consequences of her plea. Her only claim is that she did not fully understand the nature of her right to appeal. The court stated that her "right to appeal these pleas of guilty is very limited," and the plea statement indicated that by pleading guilty she waived her "rights to file an appeal." Even if she understood that her right to appeal was more limited than it actually was, it is illogical for her to argue that she would not have entered a guilty plea if she had known that the right of appeal was actually more extensive than she believed. In fact, she is in the same position as a defendant who pled guilty

there was a limited time frame within which she could seek to withdraw her plea, and she admits she never filed a motion to withdraw her plea.

### B. Right to Counsel

¶ 31 Manning's final argument for resentencing is that she was "deprived of her right to counsel during the period for perfecting the appeal." She admits that she "did not inform counsel that she wished to appeal," but claims that her "trial counsel performed deficiently in failing to advise [her] following sentencing regarding the nature of her right to appeal and the time limit for perfecting an appeal." [11] To prevail on an ineffective assistance of counsel claim, "a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant." *Bundy v. Deland*, 763 P.2d 803, 805 (Utah 1988). *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

██ ¶ 32 In the context of Manning's claim, "*Strickland's* holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances'" is applicable. *Roe v. Flores–Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065). The primary question in this case is whether counsel's failure to advise Manning about the specific details of her limited right to appeal constitutes deficient performance. The Supreme Court has held

that counsel has a constitutionally imposed duty to consult with the defendant about an appeal *when there is reason to think* either (1) *that a rational defendant would want to appeal* (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480, 120 S.Ct. at 1036 (emphasis added). The Court explained that such a judgment is based on "all the information counsel knew or should have known" and that "a highly relevant factor ... [is] whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* A further consideration is "whether the defendant received the sentence bargained for as part of the plea." *Id.*

¶ 33 In this case, Manning entered into a favorable plea agreement and obtained a sentence that should have been expected. She pled guilty to the charges of unlawful dealing with property by a fiduciary, failure to render a proper tax return, and theft. In exchange, the State dismissed three second degree felony charges and reduced the second degree felony charge of theft by deception to the third degree felony charge of theft. Under the plea agreement, the State also agreed not to file any additional charges arising out of her criminal conduct and not to file any charges against Manning's daughter for her involvement.

¶ 34 Her attorney stated at the plea hearing that Manning had "participated in the preparation of" the written plea statement. Manning stated that her attorney had "taken the time to extend himself to adequately and

---

after being told that she had the right to be acquitted within the next week, when in fact she only had the right to a speedy trial before an impartial jury. She is also in the same position as a defendant who pled guilty even though he was told that the maximum punishment was being burned at the stake, when in fact a brief jail sentence was the maximum available sanction. There is no prejudice in these situations, where a typical defendant would be even less likely to plead guilty in light of the information they received than would a defendant who had

been properly advised. Furthermore, we note that the information provided by the trial court during the plea colloquy was in line with rule 11, which requires the court to advise, as concerns appeal rights, only "that the right of appeal is limited" before accepting a guilty plea. Utah R.Crim. P. 11(e)(8).

11. She does not claim that she ever asked counsel for a fuller explanation of exactly what her "limited" appeal rights entailed, notwithstanding having ample opportunity to do so.

properly serve me, and I'm satisfied with his service." It is undisputed that she did not request that an appeal be filed. Furthermore, Manning met with her attorney three or four times *after* sentencing, at least some of which meetings were during the time allowed for filing an appeal, and thus had ample opportunity to air any dissatisfaction with her sentence, concern about her guilty plea, or interest in appealing. We cannot believe that a rational defendant in Manning's position would have wanted to appeal, and Manning failed to demonstrate to her attorney any interest in appealing.[12] Although Manning ultimately filed an untimely pro se notice of appeal, this late onset of "buyer's remorse" has no bearing on whether "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. In sum, Manning has failed to demonstrate any objectively deficient performance on the part of her counsel.

## CONCLUSION

¶ 35 The trial court correctly denied Manning's petition for postconviction relief. Its decision is therefore affirmed.

¶ 36 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and JAMES Z. DAVIS, Judge.

---

12. Given Manning's favorable plea bargain and sentence, the available grounds for appeal appear to be very limited. She could appeal her sentence if she believed it was unlawful and she could challenge the voluntariness of her guilty plea if the trial court denied a motion for leave to withdraw the plea. The ordered one-year of incarceration, with credit for time served, was well within the range of the trial court's discretion. The two third degree felonies each carried a possible sentence of zero to five years and the second degree felony carried a possible sentence

of one to fifteen years. Manning never filed a motion to withdraw her guilty plea, even though she was informed at the plea hearing that she had 30 days to do so, and she never suggested that the plea was involuntary. Her claim is essentially that she wants to appeal because she was not fully informed of the nature of the right to appeal. This type of circular reasoning, more fully critiqued in notes 7 and 10, does not provide a basis for a rational defendant to appeal or a reason to invalidate the plea.